

**FILED**

Jun 11 2018, 8:57 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Erica Manis, | June 11, 2018 |
| *Appellant-Petitioner* | Court of Appeals Case No. 18A-GU-96 |
| v. | Appeal from the Madison Circuit Court |
| Trista McNabb, | The Honorable Thomas Newman, Jr., Judge |
| *Appellee-Respondent* | The Honorable Christopher A. Cage, Master Commissioner |
| | Trial Court Cause No. 48C03-1512-GU-593 |

**Baker, Judge.**

[1] Erica Manis (Mother) appeals the trial court's denial of her petition to terminate Trista McNabb's (Guardian) guardianship of her child, J.F. (Child), and its denial of her request for parenting time. She argues that the trial court erred by denying her petition to terminate the guardianship because the evidence showed that she was able to care for Child and that the trial court erred by concluding that it lacked authority to order parenting time for Mother. Finding that the trial court did not err by denying Mother's petition to terminate the guardianship, but that the trial court erred by refusing to consider Mother's request for parenting time, we affirm in part, reverse in part, and remand for further proceedings.

## Facts

[2] Child was born in 2012. On December 14, 2015, Guardian filed a petition for appointment of a guardian for Child.[1] A hearing took place on January 5, 2016, and the following day, the trial court appointed Guardian as Child's temporary guardian. On February 3, 2016, Mother filed a motion to terminate the temporary guardianship and a motion requesting parenting time. On February 26, 2016, Guardian filed a motion to extend the temporary guardianship. On March 10, 2016, the trial court ordered the temporary guardianship extended.

---

[1] The record does not reveal what prompted Guardian to file her petition or the substance of any pleadings or hearings regarding the appointment of a temporary, and later, a permanent, guardian.

[3] Hearings took place on June 7 and 24, 2016, and July 21, 2016. On July 25, 2016, Mother was charged with unlawful possession or use of a legend drug, possession of a controlled substance, and possession of paraphernalia. On August 17, 2016, the trial court appointed Guardian as Child's permanent guardian. The trial court did not order parenting time for Mother, instead "leaving that issue to the discretion of the Guardian to act in the best interests of the minor child in maintaining meaningful contact with all family." Appellant's App. Vol. II p. 110.

[4] On March 6, 2017, Mother pleaded guilty to unlawful possession or use of a legend drug, and the other charges were dismissed. Mother was placed on probation and ordered to participate in random drug screens and treatment at a substance abuse rehabilitation center. On May 3, 2017, Mother filed a petition to terminate the guardianship, arguing that her condition had improved such that she could care and provide for Child, or in the alternative, requesting parenting time with Child. On May 11, 2017, the trial court denied Mother's request for parenting time, stating that no statutory or other authority existed under which the trial court could order parenting time during the guardianship proceeding.

[5] On May 10 and July 26, 2017, Guardian filed motions to dismiss Mother's petition to terminate guardianship. The trial court denied both of Guardian's motions. On August 18, 2017, Guardian filed a motion to establish child support. A hearing on Mother's petition to terminate guardianship and Guardian's motion to establish child support took place on October 12, 2017.

On December 20, 2017, the trial court denied Mother's petition and granted

Guardian's, making the following findings of fact and conclusions of law:

> 6. That after this Court imposed its original guardianship order, the Mother went inpatient at several facilities . . . . During her stay at [one facility] mother was alleged to have made threats of harm about the guardian. As such, the guardian, Trista McNabb obtained a protected order against mother.
>
> ***
>
> 8. Mother continues to reside with her grandparents who furnish her with everything she needs financially.
>
> 9. Mother testified that she hasn't worked in nearly two years but did recently try to work at Pizza King but quit that employment after only one-half day.
>
> 10. Mother has been in multiple car [collisions] in recent years, the most recent of which involved another car that was provided by her grandmother when she rear-ended another driver on August 31, 2017. In the two years prior, she had totaled two other cars through her own fault.
>
> 11. Mother currently is unemployed due to a broken leg which she received in a recent car accident, but has a pending application for Social Security benefits.
>
> 12. Jeannie Manis, grandmother of Mother, admitted that Mother had used her credit card without authorization. She admitted she had made Mother leave the house in fall of 2016 because she was being "disrespectful". When furnished with copies of electronic communications that Guardian argued was evidence of Mother was still engaging [sic] in drug seeking

behavior, grandmother acknowledged that this was also another reason that Mother had been asked to leave.

13. Witness Lexi Manis recalled a similar incident where Mother had been asked to leave her grandmother's home again in summer of 2017, which lasted for only a short time.

***

18. Mother continues to maintain that she does not have a drug problem and maintains that she has not abused drugs in over two years. She claimed she had not "actively used" since before [Child] was born.

19. Mother testified that she attends treatment [at the substance abuse rehabilitation center through] individual counseling and a psychiatrist. Mother testified that she also attends Narcotics Anonymous and a local church.

20. There was evidence presented that as a result of mother's treatment . . . she has seen a psychiatrist that has adjusted her medication. Mother's medication was adjusted in the summer of 2017. Such an adjustment has had a positive impact on mother.

21. Mother provided mental health records showing five visits she had . . . between August 4, 2016, and April 11, 2017. These records are inconclusive to show progress is being made, as they fail to show regular appointments. The records indicate that [Mother] was not compliant with recommendations that were made.

22. The evidence is clear that Mother now has a better support network in place, than at the time of the imposition of the guardianship.

23. Family and friends have seen a change in mother's behaviors and attitudes over the past six months. Mother regularly watches her friend's grandchildren for long periods of time without issue.

24. The mother sets and manages her own probation, mental health and medical appointments.

25. Family members assist Mother to travel to her various appointments.

26. Mother has not had any contact with her son since the summer of 2016. At the time that [she] initially consented to the guardianship,[2] Mother believed that her contact with her child would continue once permanent guardianship was granted.

27. It is also clear that at the time of the imposition of the permanent guardianship, Mother opposed it vigorously; aware that visitation would not be an issue that the Court would enter in the event of the imposition of the guardianship.

***

CONCLUSIONS OF LAW

***

2. The Court has taken in the well-being and best interests of the child in making its decision. It is the Court's conclusion that it is

---

[2] The record does not reveal if or when Mother consented to the guardianship.

in the best interests of the child that the guardianship continue and DENIES Mother's request to terminate it herein.

3.  The Court concludes that the guardian is entitled to an order of child support in the sum of $51.00 per week. . . .

***

6.  The limited mental records Mother submitted to the court were some months old, did not show that she was compliant with recommendations, and did not demonstrate or indicate her to be a fit parent to the extent that the Court was convinced that the need for the guardianship was no longer present; or that dismissing the guardianship would be in the best interests of the child.

7.  Mother expressed belief that at the time of the imposition of the original guardianship, she did not have a mental health problem or substance abuse problem, instead believing [Child] was taken from her because she didn't have a job.

8.  Mother's subsequent arrest, [and] lack of acceptance of her history of drug abuse have limited the progress which she has been able to make toward establishing independence despite the undoubted improvements that have been witnessed by family and friends.

9.  The Court concludes that her claimed her [sic] "threat to harm the guardian" were not credible threats against the guardian when viewed in context of the evidence presented.  When taken in context, they were generalized statements that do not and should not prevent her from having contact with the minor child herein.

10.  The Court concludes that Guardian shall take all steps necessary to remove the child from being a protected party so as to permit contact or visitation.  While the Court has no discretion in this cause to [] direct that Guardian seek to dismiss or the current protective order as it appl[ies] to herself; the Court would consider that factor in the future as to whether the current guardian is the best person suited to be guardian in the future.

11.  As to parenting time/visitation with the child, the Court has long expressed its belief that it lacks authority in a Guardianship to order a parenting time/visitation schedule; the continued lack of contact with mother is a factor that the Court will consider the allowance or denial of that contact in the future in reviewing the continuing appropriateness of Guardian to serve in that capacity.

Appealed Order p. 3-7.  Mother now appeals.[3]

# Discussion and Decision

[6]  Mother raises three issues on appeal, which we consolidate and restate as:  1) whether the trial court erred by denying her petition to terminate guardianship, and 2) whether the trial court erred by concluding that it lacked authority to consider and determine parenting time for Mother.

---

[3] Guardian has not filed an appellate brief in this case.  Accordingly, we may reverse if Mother presents a prima facie case of error.  *In re Riddle*, 946 N.E.2d 61, 70 (Ind. Ct. App. 2011).  "Prima facie error is error at first sight, on first appearance, or on the face of it."  *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind. Ct. App. 1991) (internal quotation marks and citation omitted).

# I. Petition to Terminate Guardianship

[7] Mother argues that the trial court erred by denying her petition to terminate guardianship. Specifically, Mother argues that the evidence showed that she was able to care for Child and that Guardian failed to present any evidence to the contrary. Mother also contends that the evidence did not support the trial court's findings of fact or conclusions of law.

[8] Indiana Code section 29-3-12-1(c)(4) provides that the trial court may terminate any guardianship when the guardianship is no longer necessary. "All findings and orders of the trial court in guardianship proceedings are within its discretion." *In re Guardianship of Hollenga*, 852 N.E.2d 933, 936 (Ind. Ct. App. 2006) (citing I.C. § 29-3-2-4(a)). We review custody decisions for error, with a "preference for granting latitude and deference to our trial judges in family law matters." *Matter of Guardianship of I.R.*, 77 N.E.3d 810, 813 (Ind. Ct. App. 2017). In determining whether the trial court erred, we review the court's findings and conclusions, which we may not set aside unless they are clearly erroneous. *Id.* We will consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment, and we will not reweigh the evidence nor will we reassess the credibility of witnesses. *Id.*

[9] Pursuant to Indiana Code section 31-14-13-6, child custody may not be modified unless the modification is in the best interests of the child and there is a substantial change in one or more of the factors that the court may consider

under section 31-14-13-2.[4] *In re Guardianship of L.R.T.*, 979 N.E.2d 688, 690 (Ind. Ct. App. 2012). When a parent initiates an action to reobtain custody of a child who has been in the custody of another, the burden of proof does not shift to the parent, but instead is on the third party. *Matter of Guardianship of I.R.*, 77 N.E.3d at 813. There is a strong presumption that a child's interests are best served by placement with the natural parent. *Id.* A parent's burden to show a modification of custody is justified is "minimal," and after meeting "this 'minimal' burden of persuasion to terminate the guardianship, the third party has the burden to prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another." *Id.* (internal quotation marks and citation omitted).

[10] Mother argues that the trial court erred by finding that it was in Child's best interest for the guardianship to continue in light of four findings of fact that the trial court made: that Mother's medication had helped her, that Mother has a support network in place, that family and friends have seen a change in Mother and that Mother watches her friend's grandchildren, and that Mother manages her own appointments.

---

[4] Relevant factors include (1) the age and sex of the child, (2) the wishes of the child's parents, (3) the wishes of the child, (4) the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest, (5) the child's adjustment to home, school, and community, (6) the mental and physical health of all individuals involved, (7) evidence of a pattern of domestic or family violence by either parent, and (8) evidence that the child has been cared for by a de facto custodian.

[11] Initially, we note that Mother provided an incomplete record that does not include Guardian's petitions for temporary and permanent guardianship. Thus, we do not know what prompted Guardian to file her petitions, and we are unable to compare Mother's situation at the time of the October 12, 2017, hearing to her situation when the guardianship was ordered. As a result, we are unable to discern whether there was a substantial change in one or more of the factors that a trial court considers for modification of child custody. In addition, Mother's argument regarding these four findings of fact is a request that we reweigh the evidence and reassess the credibility of the witnesses—an invitation which we decline.

[12] During the hearing, testimony was elicited that Mother lives with her grandparents, is financially dependent on them for her needs, and would be financially dependent on them for Child's needs; that Mother's grandmother had asked her twice to leave their home for being disrespectful, for using her grandmother's credit cards without permission, and for using drugs; that Mother has been unemployed for nearly two years and that her most recent attempt at working ended after one-half day; and that Mother is responsible for three recent car accidents, two of which resulted in totaled cars. In other words, the evidence showed that Mother's living situation was not completely stable; that Mother was not working on becoming self-sufficient; and that Mother was either unable or unwilling to make safe decisions for herself. Guardian met her burden to prove by clear and convincing evidence that

Child's best interests are substantially and significantly served by placement away from Mother.

[13] Mother also challenges three of the trial court's findings of fact and conclusions of law. First, she challenges the trial court's finding of fact that she has not had any contact with Child since summer of 2016, arguing that the lack of contact between Mother and Child cannot be attributed to Mother. The record supports this finding, and we note that the trial court did not attribute it to Mother nor did it base its conclusion on this finding. Instead, the trial court implicitly acknowledged Guardian's role in keeping Mother from Child, concluding that Mother's threat to Guardian was not credible and should not prevent her from having contact with Child and that Guardian should act to remove Child from being a protected party under the protective order.

[14] Mother also challenges the trial court's conclusion that "Mother expressed belief that at the time of the imposition of the original guardianship, she did not have a mental health problem or substance abuse problem, instead believing [Child] was taken from her because she didn't have a job." Appealed Order p. 6. Mother argues that this conclusion is an error because she believed that the guardianship was ordered based on her substance abuse issues and recent arrest. During cross-examination, Guardian's counsel asked Mother about a mental health record from March 2, 2017, that reported that Mother presented symptoms of substance abuse and appeared to be impaired; Mother denied that she had been abusing substances or impaired at that time. Guardian's counsel also asked about a mental health record from September 21, 2016, that stated

that Mother had arrived at the treatment center acting suspicious and odd and had admitted herself. Mother denied admitting herself for treatment or that she had acted suspicious or odd. This testimony supports the trial court's conclusion that Mother believed that she did not have mental health or substance abuse problems.

[15] As to the trial court's conclusion that Mother believed Child was placed under a guardianship because she was unemployed, we agree with Mother that the record does not support this conclusion. However, Mother fails to show how she was prejudiced by this conclusion or how her belief about why the guardianship was ordered affects the outcome of this case. Therefore, Mother's argument on this point is unavailing.

[16] Finally, Mother contests the trial court's conclusion that her "subsequent arrest, [and] lack of acceptance of her history of drug use have limited the progress which she has been able to make toward establishing independence despite the undoubted improvements that have been witnessed by family and friends." *Id.* Mother argues that this conclusion is a contradiction that contrasts the findings of fact. We see no contradiction. The trial court recognized that although Mother had made some improvements in her life, she could have progressed even further in establishing self-sufficiency if she had taken responsibility for her actions and avoided another arrest and additional drug use. This conclusion is easily supported by the findings of fact, which recognized that Mother had taken some positive steps in her life but also continued to face real, and often self-imposed, obstacles.

[17]     In sum, the trial court did not err by denying Mother's petition or in its findings of fact and conclusions of law.

## II.  Parenting Time

[18]     Mother next argues that the trial court erred by concluding that it lacked statutory or other authority to determine parenting time for Mother.

[19]     The issue of whether a trial court has statutory or other authority to determine and order parenting time for a parent whose child is placed with a guardian is a matter of first impression.[5]  While no statute explicitly grants trial courts this authority in guardianship proceedings, no statute precludes it, either.  And because our General Assembly has clearly intended for noncustodial parents to have parenting time unless it would endanger or impair the physical or mental health of the child, we find that a trial court has the authority to determine and order parenting time for a parent whose child is placed with a guardian.

[20]     The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children.  *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  Our society considers the parent-child relationship to be "one of the most valued relationships." *Id.* (internal quotation marks and citation omitted).  The liberty

---

[5] Nonetheless, trial courts have awarded parenting time in this situation. *See*, *e.g.*, *In re B.J.N.*, 19 N.E.3d 765, 769-70 (Ind. Ct. App. 2014) (discussing restriction of parenting time and requirement that it be supervised for father whose child was placed with a guardian); *see also In re Guardianship of A.L.C.*, 902 N.E.2d 343, 355-58 (Ind. Ct. App. 2009) (trial court determined that father should have parenting time with child who was placed with a guardian because it was in child's best interests).

interest "'of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court.'" *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Id.* (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). Our society reflects "'a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972)).

[21] Our Supreme Court explained that "'Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents,'" and thus a noncustodial parent is "'generally entitled to reasonable visitation rights.'" *Id.* at 762 (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006)). Indiana Code section 31-17-4-2 provides that parenting time rights shall not be restricted unless there is a finding "that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." Our appellate courts have interpreted this statute to require evidence establishing that visitation *would* endanger or impair the physical or mental health of the child. *Perkinson*, 989 N.E.2d at 763. A trial court is empowered to specify and enforce the visitation rights of the noncustodial parent pursuant to Indiana Code. *Id.* at 762.

[22] The preamble to the Indiana Parenting Time Guidelines states that the Guidelines "are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent." The Guidelines further provide that "[a] child has the right both to support and parenting time . . . ." Ind. Parenting Time Guidelines § I(E)(5). Indiana has a "legislatively-expressed presumption in favor of parenting time with the noncustodial parent." *Perkinson*, 989 N.E.2d at 764. "[N]ot only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest." *Id.* "Extraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child." *Id.* at 765.

[23] Thus, our General Assembly clearly intended for parents to have parenting time, barring exceptional circumstances, when the parent and child do not live together. Despite the lack of a statute explicitly addressing parenting time for a parent whose child has been placed with a guardian, parenting time for such a parent is indisputably within the realm of what our General Assembly envisioned when considering the rights of a parent and the best interests of the child. A trial court that orders parenting time for such a parent is, therefore, effecting the legislature's intent. Accordingly, we hold that a trial court has the authority to determine whether parenting time is warranted and order reasonable parenting time for a parent whose child is placed with a guardian. In so doing, a trial court must balance a parent's right to visit his or her child

with the best interests of the child. And in ordering parenting time in these cases, it would be best practice for a trial court "to make specific findings to support its parenting time order." *Perkinson*, 989 N.E.2d at 765.

[24] Here, Mother has clearly expressed a desire to be part of Child's life. At the time of the October 12, 2017, hearing, she had not seen Child since July 2016. Regarding Mother's request for parenting time, the trial court simply accepted Guardian's opinion as to whether Mother should be able to see Child.[6] And in its order, the trial court ordered Guardian to "take all steps necessary to remove the child from being a protected party so as to permit contact or visitation" and stated that it would consider "the continued lack of contact with mother" when reviewing the continuing appropriateness of Guardian to serve as the guardian in the future. Appealed Order p. 6-7. In other words, the trial court allowed a partial third party to decide whether and how much Mother should be able to enjoy her constitutionally-protected "'precious privilege'" and right to visit her child. *Perkinson*, 989 N.E.2d at 762 (quoting *Duncan*, 843 N.E.2d at 969)).

[25] We find that the trial court erred. First, for the reasons discussed above, we find that the trial court erred by not considering Mother's request for parenting time or determining whether and how much parenting time was appropriate. Second, we find that the trial court erred by deferring to Guardian's judgment

---

[6] During the hearing, the trial court asked Guardian under what circumstances she thought it would be appropriate for Mother and Child to visit; Guardian's counsel then asked Guardian what Mother would need to do to obtain visitation or terminate the guardianship.

about Mother's parenting time. We simply do not understand why the trial court would defer to Guardian, a person with a subjective perspective and invested stake in the matter, about Mother's constitutionally-protected right to see her son. Guardian, having disregarded Mother's position as Child's mother and Mother's wishes to see Child, had already prevented Mother from seeing Child for well over a year for a reason that the trial court concluded was unfounded. And still the trial court left future parenting time to Guardian's discretion, thereby potentially further depriving Mother and Child of time together and an opportunity to develop a meaningful relationship and bond.

[26] We cannot state strongly enough that a trial court should not allow a third party alone to determine a parent's parenting time with his or her child during guardianship proceedings. If parties cannot agree on their own to a plan that is in the best interests of the child, then the trial court must take an active role in developing one. *See* Ind. Parenting Time Guidelines § II(A) ("When the parties cannot reach an agreement on a parenting plan, the specific provisions which follow are designed to assist parents *and the court* in the development of a parenting plan. They represent the minimum recommended time a parent should have to maintain frequent, meaningful, and continuing contact with a child") (emphasis added). We reverse the trial court's order that it cannot determine parenting time for Mother and remand for further proceedings consistent with this opinion.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

Kirsch, J., and Bradford, J., concur.