## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2018, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of Z.K. (Minor Child) and C.M., <br><br> *Appellant-Defendant,* <br><br> v. <br><br> The Indiana Department of Child Services, <br><br> *Appellee-Plaintiff.* | November 15, 2018 <br><br> Court of Appeals Case No. 18A-JT-979 <br><br> Appeal from the Wells Circuit Court <br><br> The Honorable Kenton W. Kiracofe, Judge <br><br> Trial Court Cause No. 90C01-1707-JT-16 |

**Tavitas, Judge.**

## Statement of the Case

C.M. ("Father") appeals the termination of his parental rights to Z.K. (the "Child"). We affirm.[1]

## Issues

Based upon Father's argument in his brief, we restate the issues as follows:

1.  Whether the trial court properly concluded the timing requirements of the termination of parental rights statute were met.

2.  Whether there is sufficient evidence to support the trial court's conclusion that the conditions leading to the Child's removal will not be remedied.

3.  Whether the trial court properly concluded that termination of Father's parental rights is in the Child's best interests.[2]

## Facts

The Child was born to Mother and Father in March 2016. On April 4, 2016, the Indiana Department of Child Services ("DCS") family case manager,

---

[1] S.K. ("Mother") also took part in the proceeding below but consented to the adoption of the Child by relative foster parents. Therefore, Mother does not participate in this appeal, and we review the termination of Father's parental rights only.

[2] Father makes two separate factual arguments related to conclusions by the trial court. We note that, even if the trial court's finding misstated the record, this claim is unavailing as, even without these conclusions, the outcome of this case would not change. *See Manis v. McNabb,* 104 N.E.3d 611, 619 (Ind. Ct. App. 2018) ("As to the trial court's conclusion that Mother believed Child was placed under a guardianship because she was unemployed, we agree with Mother that the record does not support this conclusion. However, Mother fails to show how she was prejudiced by this conclusion or how her belief about why the guardianship was ordered affects the outcome of this case. Therefore, Mother's argument on this point is unavailing.").

Wendelene Garrett, received a report which alleged medical neglect of the Child, life and health endangerment of the Child, and lack of supervision of the Child. When Garrett went to the home where the Child was located, Garrett learned that the Child had been staying with T.B. and J.B. ("foster parents") for eight to ten days. Foster parents are the Child's aunt and uncle. The Child was twenty-seven days old. Foster parents indicated that Mother was going to pick up the Child, and foster parents were concerned that Mother and Father could not provide for the Child's basic needs.

[4] When Mother and Father arrived at foster parents' home to pick up the Child, and Garrett addressed these allegations with Father, Father was "aggressive" and said that Garrett had "no business in their business." Tr. Vol. II p. 59. Garrett offered Mother and Father a drug test while at foster parents' home, which Mother and Father refused. Mother and Father wanted to take the Child to Wilshire, Ohio, but because Garrett could not go to Ohio to assess the Child's safety, and given Father's "demeanor on that night," Garrett felt it was best to remove the Child from Mother's and Father's care. *Id.* at 61. As a result, the Child was detained and remained in kinship care with foster parents. Garrett then transferred the case to family case manager Brittany Webber.

[5] The trial court held a detention hearing on April 5, 2016, and ordered continued removal of the Child. After the detention hearing, Webber had a difficult time contacting Mother and Father. The same day, Father was arrested for fleeing law enforcement.

[6] DCS filed a petition alleging that the Child was a child in need of services ("CHINS"). On August 1, 2016, the Child was determined to be a CHINS, and the court issued a dispositional decree the same day. Mother and Father both agreed the Child was a CHINS and signed an agreed order.

[7] The agreed order required Father to: (1) maintain suitable, safe, and stable housing; (2) secure and maintain a legal and stable source of income; (3) not use, consume, manufacture, trade, distribute, or sell any illegal controlled substances; (4) obey the law; and (5) submit to all requested drug screens.[3] Father was still incarcerated during both periodic review hearings on September 26, 2016, and February 2, 2017. On February 2, 2017, the trial court entered an order for protection against Father for the foster parents and the Child due to threatening letters written by Father.

[8] The family case managers, as well as Beth Webber, the guardian ad litem ("GAL"), all noted difficulty working with and contacting Father in the underlying CHINS case due to his constant incarceration. Even when Father was out of incarceration briefly in May 2017, he did not contact DCS, and DCS could not locate Father.[4]

---

[3] There was also an agreed order as to Mother, which we do not include as this appeal is only related to Father.

[4] We note that the timeline of Father's incarcerations and releases is not completely clear on the record itself. Father's brief states that Father was "released from incarceration April 12, 2017 . . . ." Appellant's Br. p. 10. Then, "Father was arrested on May 2, 2017, for testing positive for drugs while on probation. He was released a few days later and rearrested May 25, 2018, for another probation violation. At some time during that period, Father was charged with Dealing in Methamphetamine, Intimidation, and Battery and later

[9] Once Father was released from incarceration on April 12, 2017, he submitted to four drug tests. The first drug test on April 18, 2017, was negative; the second on April 20, 2017, was positive for amphetamine; the third on April 27, 2017, was positive for THC; and the fourth, on May 2, 2017, was positive for amphetamine, methamphetamine, and THC. Father maintained that the failed tests were "false positives." Tr. Vol. II p. 48. Father alleged that medication prescribed to him in jail was still in his system and resulted in the positive screenings. Father did admit, however, to using THC while Father was out of incarceration.

[10] Approximately two months after Father's April 12, 2017 release from incarceration, Father was rearrested and convicted of intimidation, dealing in methamphetamine, and battery. Father's current projected release date is June 26, 2021. Father hopes, with time cuts to his sentence, to be released closer to July 2019. Father also has a pending charge for criminal mischief, but Father is unaware whether that charge has been dropped.

[11] DCS filed its petition for termination of parental rights on July 10, 2017.[5] On November 7, 2017, Mother signed a consent for adoption and voluntarily

---

sentenced to six years imprisonment. While incarcerated on those charges, Father was charged in Adams County with Criminal Mischief August 31, 2017." *Id.* at 11.

[5] The petition alleged: (1) the Child was removed from parents and has been under supervision of DCS for at least fifteen months out of the most recent twenty two months, (2) the Child has been removed from the Child's parents continuously for at least six months under a dispositional decree, (3) there is a reasonable probability that the conditions that resulted in the Child's removal or the reasons for placement will not be remedied, (4) termination of the parent-child relationship is in the best interest of the Child, and (5) there is a satisfactory plan for the care and treatment of the Child.

relinquished her parental rights. The Child has been with foster parents almost the entirety of the Child's life, and Mother and Father have had no unsupervised visits with the Child since the Child's removal by DCS.

[12] At the fact finding hearing, the GAL testified that Father had several issues, including substance abuse and anger issues. The GAL also noted that, because Father did not participate in a psychological examination, she was not aware if Father had other issues. The GAL also addressed concerns regarding Father's failure to address his housing problems and drug use. The GAL testified that the Child needed a "permanent, stable home." Tr. Vol. II p. 78. The GAL testified that waiting until Father is released from jail is not in the Child's best interests. The GAL concluded her testimony stating "it is in the best interest of the child that the parental rights be terminated, and that he be allowed to be adopted by the people that he knows as his parents, by the current placement . . ." *Id.* at 79. The permanency plan is for the Child to be adopted by his current foster parents.

[13] On December 19, 2017, after the fact finding hearing, the trial court made several findings and conclusions from the bench. After issuing oral findings, the trial court issued a written order which included findings of fact and conclusions of law on January 31, 2018. The trial court concluded that DCS had met its burden to prove the allegations in the petition to terminate parental rights and terminated Father's parental rights.

## Analysis

Father challenges the termination of his parental relationship with the Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *In re K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re C.G.,* 954 N.E.2d 910, 923 (Ind. 2011). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

Pursuant to Indiana Code Section 31-35-2-8(c), "The trial court shall enter findings of fact that support the entry of the conclusions required by subsections

(a) and (b)" when granting a petition to terminate parental rights.[6] Here, the trial court did enter findings of fact and conclusions of law in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions of law entered in a case involving the termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[17] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

---

[6] Indiana Code Sections 31-35-2-8(a) and (b), governing termination of a parent-child relationship involving a delinquent child or CHINS, provide as follows:

(a) Except as provided in section 4.5(d) of this chapter, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.

(b) If the court does not find that the allegations in the petition are true, the court shall dismiss the petition.

(A)    That one (1) of the following is true:

(i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    The court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services of a delinquent child.

(B) that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

<blockquote>
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.
</blockquote>

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[18] Father essentially makes three arguments on appeal. First, Father argues that the trial court erred in concluding the "timing requirements" of the termination of parental rights statute were met. Second, Father argues there is no evidence to support the trial court's conclusion that the conditions that led to the Child's removal would not be remedied. Third, Father argues that there is no evidence that termination of Father's rights is in the best interests of the Child.

### *A. Timing Requirements*

[19] Father first argues that the trial court erred in concluding the "timing requirements" had been met as required by Indiana Code Section 31-35-2-4(b)(2)(A). Father does concede that the trial court addressed in its oral findings that the Child was removed for six months pursuant to the CHINS dispositional decree, but argues that "its final, written judgment is silent as to that issue." Appellant's Br. p. 19. Father also concedes that "the juvenile court's only conclusion regarding timing was Finding [Number] 30, in which

the juvenile court determined "the child has been out of the care of his parents and in the care of the relative placement for twenty of the most recent twenty-two months." *Id.*

[20] The trial court stated in its oral findings that DCS proved both of the allegations under (A)(i) and A(iii). *See* Tr. Vol. II p. 81. The trial court's initial written order, entered on January 30, 2018,[7] concluded the following:

> Findings of Fact:
>
> * * * * *
>
> 10. On April 4, 2016, the Wells County Department of Child Services (DCS) formally detained the child and placed with the [foster parents].
>
> * * * * *
>
> 12. A detention hearing was held on April 5, 2016. The court found that removal of the child was authorized and necessary to protect the child . . . .
>
> * * * * *
>
> 16. On August 1, 2016, the parties submitted an agreed order for disposition and parental participation . . . .

---

[7] The trial court also entered an amended written order on June 25, 2018. The orders are the same regarding the findings and conclusions above.

* * * * *

30. The child has been out of the care his [sic] parents and in the care of the relative placement for twenty (20) of the most recent twenty-two (22) months.

* * * * *

Conclusions of Law:

* * * * *

8. Since April 4, 2016, [the Child] has been removed from his home and not returned on a trial home visit.

9. Since April 4, 2016 [the Child] has been under the supervision of the county office of family and children.

10. Apart from the first few weeks of life, [the Child] has resided with the current placement the entirety of his life.

Appellant's App. Vol. II pp. 81-83.

[21]     The petition for the involuntary termination of the parent-child relationship alleged both that:  (1) the Child was removed from Mother's and Father's care for six months pursuant to a dispositional decree, and (2) the Child has been under DCS' supervision for at least fifteen of the last twenty-two months.  The evidence supported both of these allegations.  The Child has been out of Mother's and Father's care since the Child was twenty-seven days old.  The evidence shows that the Child has been in DCS' custody from at least April 5,

2016, which was the day of the DCS detention hearing. The petition for the involuntary termination of the parent-child relationship was filed on July 10, 2017. The petition was, therefore, filed more than fifteen months after the Child was removed from Mother's and Father's care. Further, the dispositional decree in the CHINS proceeding was entered on August 1, 2016, or eleven months before the petition for termination of parental rights was filed. This evidence supports the trial court's conclusions that the timing requirements of the statute were met. Based upon the foregoing, the trial court's finding regarding the timing requirements is not clearly erroneous.

### B. Probability that Removal Conditions will be Remedied

[22] Father also argues there was no evidence to support the trial court's conclusion that the conditions that led to the Child's removal would not be remedied. Specifically, Father argues that, although he "remains incarcerated and unable to care for [the Child] temporarily, Father is attempting to gain an early release so he can be reunited quickly with the child. Thus, Father soon will remedy that particular condition which led to the child's continued placement outside his home." Appellant's Br. p. 22.

[23] "In determining whether 'the conditions that resulted in the [Child's] removal . . . will not be remedied,' we 'engage in a two-step analysis.'" *In re E.M.,* 4 N.E.3d 636, 642-43 (Ind. 2014) (quoting *K.T.K. v. Indiana Dep't of Child Servs.,* 989 N.E.2d 1225, 1231 (Ind. 2013)). "First, we identify the conditions that led to removal; and second, we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* In analyzing this second step,

the trial court judges the parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions." *Id.* (quoting *Bester v. Lake Cty. Office of Family & Children,* 839 N.E.2d 143, 152 (Ind. 2005)). "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[24] Father's incarceration was not the sole reason the trial court found that the conditions resulting in removal were not likely to be remedied. The trial court based its conclusion on "Father's pattern of arrests, convictions, incarcerations, and substance abuse. . . ." Appellant's App. Vol. II p. 82. The evidence supported this finding. In a period of less than a month, Father took four drug tests, and three returned with positive results for THC, methamphetamine, and/or amphetamine. Father was arrested multiple times for varying offenses, including intimidation, dealing in methamphetamine, battery, and fleeing law enforcement. Father was even arrested the day DCS detained the Child. In the one month Father was not incarcerated, Father did very little to improve the conditions that led to the Child's removal. Approximately two months after Father's release on April 12, 2017, Father was again incarcerated. The evidence supports the trial court's findings that the conditions that led to the Child's removal are not likely to be remedied. Based on the foregoing, the trial court's finding is not clearly erroneous.

### C. Best Interests of Child

[25]     Father's final argument is that the trial court erred in concluding that termination of his parental rights is in the best interests of the Child. Specifically, Father argues there is "no evidence that [the Child's] emotional and physical development is threatened by Father's custody of him." Appellant's Br. p. 25.

[26]     In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *See In re A.B.,* 887 N.E.2d 158, 167-68 (Ind. Ct. App. 2008). In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* at 168. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office*, 989 N.E.2d 1225, 1235 (Ind. 2013). A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is a "central consideration" in determining the best interests of a child. *Id.*

[27]     There are several considerations which lead us to conclude that Father cannot contribute to the Child's need for permanency, including Father's constant incarcerations and Father's failure to pass drug tests when Father is not in jail. The GAL testified that it was in the Child's best interests to have permanency and stability, which the Father has yet to provide and cannot provide until at least 2019, in the best case scenario. Father had many opportunities to provide

permanency and stability for the Child after agreeing the Child was a CHINS. Father's own behavior, which included his continued drug use and multiple incarcerations, resulted in Father's inability to meet the agreed requirements under the CHINS dispositional decree. In evaluating the totality of the circumstances, we cannot conclude the trial court erred in finding that it was in the Child's best interests to terminate Father's parental rights. The trial court's finding regarding the Child's best interests is not clearly erroneous.

## Conclusion

[28] Based on the evidence and the trial court's findings, sufficient evidence supports the termination of Father's parental rights. Accordingly, we affirm.

[29] Affirmed.

Brown, J., and Altice, J., concur.