

FILED

Aug 09 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Blankenship, <br> *Appellant-Respondent,* <br><br> v. <br><br> Kathy F. and Larry G. Duke, <br> *Appellees-Petitioners* | August 9, 2019 <br><br> Court of Appeals Case No. <br> 19A-GU-518 <br><br> Appeal from the <br> Perry Circuit Court <br><br> The Honorable <br> Lucy Goffinet, Judge <br><br> The Honorable <br> Karen Werner, Magistrate <br><br> Trial Court Cause Nos. <br> 62C01-1711-GU-21 <br> 62C01-1711-GU-22 |

**Vaidik, Chief Judge.**

# Case Summary

[1] In this case, the trial court appointed grandparents as guardians over their grandchildren and awarded the father parenting time with the children "as

agreed upon by the parties." The father now appeals, arguing that because the evidence shows that he and the grandparents do not get along, the trial court essentially awarded him no parenting time at all. We agree with the father, vacate this part of the trial court's order, and remand this case to the trial court. On remand, the trial court should order reasonable parenting time for the father, balancing his right to visit the children with the children's best interests.

# Facts and Procedural History

Brian Blankenship ("Father") and Shannon Blankenship ("Mother"), who are divorced, have two daughters, A.B., born in 2001, and G.B., born in 2005 (collectively, "Children"). In July 2017, the Indiana Department of Child Services (DCS) filed a petition alleging that Children were children in need of services (CHINS) because of Father's and Mother's drug use. As part of the CHINS case, Children were placed with Mother's parents, Larry and Kathy Duke (collectively, "the maternal grandparents").

On November 17, 2017, the maternal grandparents filed a separate action seeking a guardianship over Children, alleging that Father and Mother were "not presently capable of properly caring for" them. Appellant's App. Vol. II p. 8. The maternal grandparents requested supervised visitation for both Father and Mother:

> If this Guardianship is granted, the Petitioners propose that [Father and Mother] have supervised visitation with their

child[ren] at all reasonable times and places as agreed to by the parties.

*Id.*

[4] Father and Mother appeared at a hearing on December 12. Mother consented to the guardianship, but Father did not. The trial court continued the guardianship hearing and later appointed counsel for Father.[1]

[5] At the guardianship hearing, Hollie Dawson, the family case manager (FCM) in the CHINS case, testified that ever since Father had started receiving supervised visits with Children in the CHINS case in December 2017, he had attended nearly every visit and that the visit notes indicated that Father had a good relationship with Children and was attentive to them and their needs. She also testified that Father was compliant with his drug screens. However, FCM Dawson believed that it was in the best interests of Children that the maternal grandparents be appointed guardians because Children were "safe" and "comfortable" in their home. Tr. p. 187. She also believed that it was in the

---

[1] The trial court appointed counsel for Father on January 2, 2018, and Father's counsel filed a Motion for Automatic Change of Judge on January 19. After a hearing on the issue, the trial court denied Father's motion. On appeal, Father states that he had thirty days from the date the case was placed and entered on the CCS to file a motion for change of judge pursuant to Indiana Trial Rule 76(C). He admits that he did not file his motion for change of judge within thirty days of November 17, 2017; however, he claims that his delay "should be excused" because he wasn't served with notice of the guardianship proceedings. Appellant's Br. p. 12. Assuming that Father wasn't served with notice of the guardianship proceedings, Father appeared at the December 12 hearing and said that he had heard about the proceedings from someone else. Therefore, even if we started the thirty-day clock on December 12, Father still filed his motion for change of judge more than thirty days later, on January 19. As for Father's claim that the thirty-day clock shouldn't start until counsel is appointed, he cites no authority for this proposition, and we decline to carve out such an exception.

best interests of Children that they have a relationship with Father and that this relationship should include parenting time. *Id.* at 195-96. In fact, she said that reunification was still the goal in the CHINS case.

[6] The maternal grandmother testified that Children had lived with her and her husband for about four years and that Father had supervised visits with Children every Sunday for two hours in the CHINS case. She added that she and her husband had a "No Trespassing Order" against Father. *Id.* at 54. The maternal grandmother also testified that if she were allowed to determine Father's parenting time, she would "l[eave] it up to the girls, when they wanted to see" him. *Id.* at 62. When asked if she would encourage a relationship between Father and Children, the maternal grandmother responded, "Well, if [Father] changed. I don't see that. But if he . . . had changed I would. Yes." *Id.* at 65. Finally, when asked if it would be useful for her and Father to communicate regarding Children, the maternal grandmother said no because "we can't get along together." *Id.* at 67. In fact, the maternal grandmother said that she had not tried to communicate with Father "at all." *Id.* at 55.

[7]     In December 2018, the trial court issued an order granting the guardianship.[2] Specifically, the court found:

> 9. The DCS caseworker state[d] that it is in [C]hildren's best interest that Kathy and Larry Duke be granted guardianship over [them]. The DCS caseworker stated that [F]ather is compliant with drug screens and that he has attended most visits with his children since he started receiving visits in the CHINS case around December, 2017.
>
> 10. The Court finds [F]ather to be unfit to care for these children on a day to day basis.
>
> 11. The Court finds that the appointment of a guardian is necessary as a means of providing care and supervision for [Children].
>
> 12. The Court finds it is in [C]hildren's best interest to appoint Kathy and Larry Duke as guardians over [them].
>
> **13. Visitation by [M]other and [F]ather shall be as agreed upon by the parties.**

Appellant's App. Vol. II pp. 43-44 (emphasis added). Father filed a motion to correct error asking for more specificity regarding his visitation with Children:

> 7. Testimony by Father and by [the maternal grandmother] indicated a high level of animosity between the parties. [The

---

[2] A few days later, the trial court in the CHINS case entered an order closing the case because permanency had "been achieved through an approved permanency plan of guardianship." *See* Cause Nos. 62C01-1707-JC-168, -170.

maternal grandmother] testified that she had never tried to facilitate any visits between Father and the Children during the nearly four years that the Children had been living with her.

\* \* \* \* \*

16. In only granting Father visitation with the children "as agreed upon by the parties," the Court failed to address the legal imperative to maintain the Children's relationship with their Father even if a guardianship was granted, especially given the testimony from [FCM Dawson] that it is in the Children's best interest to continue to have parenting time with Father.

*Id.* at 45, 46-47. The trial court denied Father's motion to correct error.

[8] Father now appeals.

# Discussion and Decision

[9] We first note that the maternal grandparents have not filed an appellees' brief. When the appellee fails to submit a brief, we will not develop an argument on her behalf but, instead, we may reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *GEICO Ins. Co. v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014).

[10] Father contends that the trial court "did not adequately provide for parenting/visitation for [him] with his children."[3] Appellant's Br. p. 10. He points out that "it is clear from the hearing that [the maternal grandparents] have great difficulty communicating with [him], and no desire to overcome those hurdles." *Id.* at 10-11. Accordingly, Father claims that the trial court's order allowing him visitation "as agreed up by the parties" will "inevitably result in conflict and denial of visitation to [him]." *Id.* at 11. He therefore asks us to remand this case so that the trial court "can articulate a minimum amount of visitation that he should receive each week with his daughters, and articulate any reasons for limitations or restrictions on that visitation." *Id.* at 19.

[11] This Court's opinion in *Manis v. McNabb*, 104 N.E.3d 611 (Ind. Ct. App. 2018), is helpful. In that case, we held that when a trial court orders parenting time in a guardianship case, it cannot allow the guardian, who often has a personal stake in the matter, to determine the parent's parenting time with their child during the guardianship proceedings. *Id.* at 621. We cautioned that doing so has the potential to deprive the parent and the child of time together and an opportunity to develop a meaningful relationship and bond. *Id.* We explained that if the parties cannot agree on their own to a parenting-time plan that is in the best interests of the child, then the trial court must take an active role in developing one. *Id.*

---

[3] Father does not challenge the appropriateness of the guardianship itself. He only challenges the part of the trial court's order regarding parenting time.

[12] Here, the trial court awarded Father parenting time "as agreed upon by the parties." But as Father argues, the evidence before the trial court was that he and the maternal grandparents do not get along. And the maternal grandparents have not filed an appellees' brief arguing otherwise. By making the parties agree upon parenting time, the trial court has essentially allowed the maternal grandparents to determine Father's parenting time with Children. It was error for the court to do so. We therefore vacate this part of the trial court's order. On remand, the trial court should "order reasonable parenting time for" Father, balancing his right to visit Children with Children's best interests. *Id.* at 620-21 (explaining that when ordering parenting time in guardianship cases, the "best practice" is for the trial court to make specific findings to support its parenting-time order).

[13] Reversed and remanded.

Riley, J., and Bradford, J., concur.