ATTORNEY FOR APPELLANT

Patrick L. Jessup
Yoder Kraus & Jessup, P.C.
Kendallville, Indiana



FILED

Nov 30 2020, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roxanna Prater, | November 30, 2020 |
| *Appellant-Respondent.* | Court of Appeals Case No. 20A-GU-895 |
| v. | Appeal from the Noble Circuit Court |
| Dianne Wineland and Steven Wineland, | The Honorable Michael J. Kramer, Judge |
| *Appellee-Petitioners.* | Trial Court Cause No. 57C01-1507-GU-29 |

**Pyle, Judge.**

## Statement of the Case

[1] Roxanna Prater ("Mother") is the parent of an eleven-year-old daughter, R.W. ("R.W."), who is currently under a guardianship with her paternal grandparents, Dianne and Steven Wineland ("Paternal Grandparents"). Mother filed a petition for visitation with R.W., and the trial court denied it without a hearing. On appeal, Mother contends that the trial court erred in

denying her petition without a hearing. Concluding that Mother is correct, we reverse and remand with instructions for the trial court to grant Mother a hearing to consider her visitation petition.

We reverse and remand with instructions.

# Issue

The sole issue for our review is whether the trial court erred in denying Mother's petition for visitation with R.W. without a hearing.

# Facts

Mother is the parent of R.W., who was born in September 2009. R.W. began residing in Paternal Grandparent's home in 2011. In July 2015, Paternal Grandparents filed a petition seeking de facto custody of R.W., which the trial court treated as a petition for guardianship. The trial court held a hearing on the petition in November 2015 and issued an order appointing Paternal Grandparents as R.W.'s legal guardians that same month. The trial court's order found that "[t]he present circumstances of [Mother] d[id] not permit her to exercise custody over the minor child" and that Mother had consented to the guardianship. (App. Vol. 2 at 29). The trial court further ordered that Mother should have visitation at "reasonable times and places." (App. Vol. 2 at 30).

In September 2016, Mother, who was incarcerated in the county jail, wrote the trial court a letter explaining that Paternal Grandparents had not allowed her to speak on the phone with R.W. Mother, who had been attending parenting

classes and A.A. meetings while she was incarcerated, told the trial court that she was scheduled to be released from jail on December 1, 2016. She asked the trial court to schedule a hearing "to resolve this matter." (App. Vol. 2 at 33). The trial court scheduled a hearing for October 2016. However, because of Paternal Grandparents' numerous requests for continuances, which the trial court granted, the hearing was not held until May 2017. Following the hearing, which Mother attended, the trial court issued an order "declin[ing] to modify [the guardianship] order." (App. Vol. 2 at 11).

[5] Three months later, in August 2017, Mother sent the trial court another letter requesting visitation with R.W. According to Mother, she had not seen her daughter in eight months, and Paternal Grandparents were not returning her calls or texts. Mother, who was again incarcerated in the county jail, was scheduled to be released in September 2017. The trial court took no action on Mother's request.

[6] In 2018 and 2019, Mother sent the trial court additional letters requesting contact with R.W. For example, in February 2019, Mother told the trial court that she had not had any contact with R.W. since December 2016. She asked the trial court to "review [her] requests and let [her] know how to proceed with this situation." (App. Vol. 2 at 38). In June 2019, Mother, who was incarcerated in the Department of Correction, wrote another letter to the trial court explaining that she was "trying . . . to have a relationship with [R.W.]" (App. Vol. 2 at 40). She asked the trial court to "please have a court hearing to

at least give [her] a chance." (App. Vol. 2 at 40). The trial court took no action on Mother's requests.

[7] In March 2020, Mother filed a *pro se* petition for visitation with R.W. The trial court summarily denied the petition without a hearing. Specifically, the following March 9, 2020, entry in the trial court's Chronological Case Summary provides: "After reviewing letter filed by [Mother], Court now respon[ds] as follows: As guardians of the child, the guardians may decide what is best for the child." (App. Vol. 2 at 21).

[8] Mother filed her notice of appeal on March 23, 2020.

# Decision

[9] As a preliminary matter, we note that Mother appears to believe that her notice of appeal was not timely filed with the Clerk of the Appellate Courts ("the Clerk"). However, our review of the trial court's Chronological Case Summary reveals that the trial court issued its order denying Mother's petition for visitation on March 9, 2020. In addition, our Clerk's docket reveals that Mother's notice of appeal was file-stamped on March 28, 2020. Mother's notice of appeal was therefore timely filed. *See* Appellate Rule 9 (stating that "[a] party initiates an appeal by filing a Notice of Appeal with [the Clerk] within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary.") We therefore turn to the merits of Mother's appeal.

[10] At the outset, we note that Paternal Grandparents did not file an appellate brief in this matter. We do not develop arguments on behalf of appellees who fail to file a brief. *WindGate Properties., LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018). In such cases, we will reverse if the appellant establishes *prima facie* error, meaning error at first sight or error on the face of it. *Id.* However, even in light of this relaxed standard, we still have the obligation to correctly apply the law to the facts in the record to determine whether reversal is required. *Id.*

[11] Mother argues that "[t]he trial court's summary denial of her petition was contrary to law and policy" and that she "should receive a hearing on her petition for visitation." (Mother's Br. 10). We agree.

[12] "'Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents.'" *Patton v. Patton*, 48 N.E.3d 17, 21 (Ind. Ct. App. 2015) (quoting *Duncan v. Duncan,* 843 N.E.2d 966, 969 (Ind. Ct. App.2006), *trans. denied*). "'As a result a noncustodial parent is generally entitled to reasonable visitation rights.'" *Patton*, 48 N.E.3d at 21 (quoting *Duncan*, 843 N.E.2d at 969). INDIANA CODE § 31-17-4-1 specifically provides that "a parent not granted custody of the child is entitled to reasonable parenting time rights, unless the court finds, *after a hearing*, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." (Emphasis added). Pursuant to this statutory provision, the trial court erred when it denied Mother's visitation petition without a hearing.

[13] We further note that in *Manis v. McNabb*, 104 N.E.3d 611, 621 (Ind. Ct. App. 2018), this Court held that "a trial court has the authority to determine whether parenting time is warranted and order reasonable parenting time for a parent whose child is placed with a guardian." We also held that when a trial court orders parenting time in a guardianship case, it cannot allow the guardian, who often has a personal stake in the matter, to determine the parent's parenting time with her child during the course of the guardianship. *Id.* We cautioned that doing so has the potential to deprive the parent and child of time together and an opportunity to develop a meaningful relationship and bond. *Id.* We further explained that if the parties are unable to agree on their own to a parenting-time plan that is in the best interests of the child, then the trial court must take an active role in developing one. *Id. See also Blankenship v. Duke*, 132 N.E.3d 410, 413 (Ind. Ct. App. 2019) (holding that "[b]y making the parties agree upon parenting time, the trial court has essentially allowed the maternal grandparents to determine Father's parenting time with Children. It was error for the court to do so.").

[14] Because the trial court erroneously failed to grant Mother a hearing on her visitation petition, we reverse and remand with instructions for the trial court to hold a hearing on Mother's petition. We further note that the "best practice" is for the trial court to make specific findings in support of its parenting time order. *See Manis*, 104 N.E.3d at 621.

Reversed and remanded with instructions.

Vaidik, J., and Brown, J., concur.