
FILED

May 30 2017, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Shana D. Tesnar
Christopher J. Evans
Adler Tesnar & Whalin
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Amber M. Neal
Delk McNally LLP
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Guardianship of I.R.,

M.P. and D.P.,

*Appellants-Respondents,*

v.

M.M.J.S.,

*Appellee-Petitioner.*

May 30, 2017

Court of Appeals Case No.
18A05-1610-GU-2431

Appeal from the
Delaware Circuit Court

The Honorable
Marianne L. Vorhees, Judge

Trial Court Cause No.
18C01-1501-GU-7

**Kirsch, Judge.**

[1]     M.P. and D.P. (together, "Guardians") appeal the trial court's order granting M.M.J.S.'s ("Mother") petition to terminate their guardianship over I.R. ("Child"). Guardians raise the following issue for our review: whether the trial court erred in terminating their guardianship because the evidence did not support the trial court's order.

We affirm.

## Facts and Procedural History

Child is the biological child of Mother and was born on March 7, 2012. In December 2014, when Child was two years old, Mother was arrested for neglect of a dependent. At that time, with Mother's consent, Child was placed in the care of Guardians, who were Mother's aunt and uncle. On January 27, 2015, Guardians filed a petition for temporary guardianship of Child, to which Mother consented, and the petition was granted by the trial court on February 24, 2015. On May 12, 2015, a review hearing was held, during which, the trial court granted the Guardians permanent guardianship of Child. In the order granting permanent guardianship, the trial court ordered that Mother must meet certain conditions prior to modifying or terminating the guardianship. *Appellant's App.* at 26-27. These conditions were as follows:

> a. Mother must show she has housing that is safe and stable for the Child to the satisfaction of this Court;

> b. Mother must show she has stable income for a reasonable period of time to support and financially care for the Child to the satisfaction of this Court;

> c. Mother must show that she has been evaluated for substance abuse and mental health and that she is receiving regular treatment for the same and has a reasonable plan to continue treatment as recommend[ed] and confirmed by the treating professionals to the satisfaction of this Court;

d. Mother must show that she is making progress and is healthy for a reasonable period of time, which includes a showing that she is sober and mentally stable and not a danger to herself or to the Child, to the satisfaction of this Court;

e. Mother must show that she is committed to staying healthy and is able to care for and offer a stable environment for the Child, to the satisfaction of this Court.

*Id*. Mother consented to the guardianship of Child and to the conditions for modification and termination. *Id*. at 24.

[4] On November 25, 2015, Mother filed a "Verified Petition to Modify and/or Terminate Guardianship and Request for Expedited Hearing." *Id*. at 29. The Guardians filed three motions to continue the hearing on Mother's petition, which were granted by the trial court. A final hearing was held on September 9, 2016, at which evidence was heard.

[5] At the hearing, Mother testified that she was living in an apartment, where she had resided for over four years. *Tr*. at 8. The apartment had two bedrooms, and Child had his own room. *Id*. Mother was working at McDonald's and had been employed there for a year; she had started as a crew member and worked her way up to being a manager. *Id.* at 9. Although her hours fluctuated at the time of the hearing, she had made arrangements to have more stable hours if Child was returned to her care. *Id*. at 9-10.

[6] Mother had previously pleaded guilty to her charge of neglect of a dependent and received eighteen months of probation. *Id*. at 4-5. At the time of the

hearing, Mother had almost completed her probation period and was set to be released from probation on October 8, 2016. *Id.* at 5. As part of her probation, Mother was subject to random drug screening, and she passed all of the screens. *Id.* at 6. Mother underwent a substance abuse evaluation through Delaware County Community Corrections ("DCCC") and followed the recommendations of DCCC. *Id.* at 11. She met with a substance abuse counselor every two weeks for a period of time and was also being treated by a doctor at Meridian Services concerning her substance abuse issues. *Id.* at 11-12. Mother also sought a mental health evaluation and had been treated for her mental health issues by a doctor since March 2016. *Id.* at 13. Mother had attempted to seek treatment in October or November 2015, but was put on a waiting list and not seen until March 2016. *Id.* At the time of the hearing, Mother was still seeing her doctor and was taking antidepressant medication for depression and anxiety. *Id.* at 14-15. At a prior hearing, Mother testified she had been diagnosed as bipolar, but her new doctor determined that diagnosis was incorrect. *Id.* at 28.

[7] Initially, Mother had supervised visitation with Child that occurred once a week for two hours. *Id.* at 17. This visitation schedule lasted for almost a full year. *Id.* She was later allowed to visit with Child for one day a week from 8:00 a.m. to 7:00 p.m. *Id.* at 16-17. Mother never missed any visitation with Child. *Id.* at 18.

[8] While Child stayed with Guardians, he displayed behavioral issues at school, and Guardians took him to Dr. Sara Davis ("Dr. Davis") in November 2015.

*Id.* at 41, 43. Dr. Davis treated Child for his issues involving interaction with his classmates and testified that Child was diagnosed with post-traumatic stress disorder, attention deficit disorder, and disruptive attachment issues. *Id.* at 42, 43. Dr. Davis testified that she believed it was in Child's best interest to have Mother participate in Child's therapy, and Mother did participate in the therapy sessions when allowed. *Id.* at 52, 60. Dr. Davis stated that Child had a hard time with transitions, and that a transition plan should be implemented to prepare Child for a transition from Guardians to Mother. *Id.* at 66. Child also required an Individualized Educational Plan ("IEP"), which Dr. Davis and Child's pre-school teacher both testified could be transitioned to another school if he was placed with Mother. *Id.* at 68, 77, 131.

[9] At the conclusion of the hearing, the trial court issued an order terminating the guardianship. In the order, the trial court found that Mother had satisfied all of the conditions set forth in the order granting permanent guardianship. *Appellant's App.* at 8-9. The trial court thus found that Mother had carried her burden to show she had met all of the conditions and also found that Guardians failed to carry their burden to overcome the presumption in Mother's favor that she should raise Child. *Id.* at 9-10. The trial court ordered a transition period for custody to return Child to Mother's care. *Id.* at 10. Guardians now appeal.

## Discussion and Decision

[10] "'All findings and orders of the trial court in guardianship proceedings are within its discretion.'" *In re Guardianship of M.N.S.*, 23 N.E.3d 759, 765 (Ind.

Ct. App. 2014) (quoting *In re Guardianship of Hollenga,* 852 N.E.2d 933, 936 (Ind. Ct. App. 2006) (citing Ind. Code § 29-3-2-4(a))). We will review the trial court's order for an abuse of discretion. *Id.* Therefore, "[w]e review custody modifications[,]" such as the one that occurred in this termination of the guardianship, "for abuse of discretion with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *K.I. ex rel. J.I. v. J.H.,* 903 N.E.2d 453, 457 (Ind. 2009) (quoting *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002)). In determining whether the trial court abused its discretion, we review the court's findings and conclusions, which we may not set aside unless they are clearly erroneous. *In re M.N.S.*, 23 N.E.3d at 766 (citing *In re Guardianship of J.K,* 862 N.E.2d 686, 690-91 (Ind. Ct. App. 2007)). We will consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment, and we will not reweigh the evidence nor will we reassess the credibility of witnesses. *Id.*

[11]     Guardians argue that the trial court erred in terminating their guardianship of Child. They assert that, although Mother has a constitutional right to raise Child, such a right does not overcome Child's best interest, which is served by continued placement with Guardians. Guardians contend that Mother failed to make a sufficient showing that she had met all of the conditions ordered in the permanent guardianship order. They maintain that the only evidence that Mother presented during the hearing to establish that she met the conditions was her own self-serving testimony. Guardians further claim that, even if Mother had shown that she met all of the conditions, they presented evidence

to successfully rebut the presumption of custody in favor of Mother. They allege that their evidence established that Child had spent a considerable amount of time in their care and had bonded with them, terminating the guardianship would be harmful to Child, and Child has psychological and behavioral issues that Mother is not prepared to accommodate. Therefore, Guardians urge that insufficient evidence was presented to support the trial court's order terminating their guardianship of Child.

[12] "Indiana courts have long held that '[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent . . . [r]ather, the burden of proof is always on the third party.'" *K.I.*, 903 N.E.2d at 460 (quoting *In re J.K.,* 862 N.E.2d at 692)). There is a strong presumption that a child's interests are best served by placement with the natural parent. *Id.* (citing *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002), *reh'g denied*). A parent's burden to show a modification of custody is justified is "minimal," and after meeting "this 'minimal' burden of persuasion to terminate the guardianship, the third party has the burden to prove 'by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another.'" *In re M.N.S.*, 23 N.E.3d at 766 (quoting *In re B.H.*, 770 N.E.2d at 27).

[13] Here, in order to meet her burden, Mother was required to show that she had met the conditions set forth in the trial court's order granting permanent guardianship to Guardians. Under the first condition, Mother was required to show that she had safe and stable housing for Child. *Appellant's App*. at 26. At

the hearing, Mother presented evidence that she lived in her own apartment, which had two bedrooms, and that she had lived there for over four years. *Tr.* at 8. Under the second condition, Mother was required to show that she had stable income for a reasonable period of time that would enable her to support and financially care for Child. *Appellant's App.* at 26. Mother testified at the hearing that she was working at McDonald's as a manager and had been employed there for a year. *Tr.* at 9. Guardians do not challenge these two conditions, and we agree with the trial court that Mother presented sufficient evidence to meet these two conditions.

[14] Under the third condition, Mother was required to show that she had been evaluated for substance abuse and mental health, was receiving regular treatment, and had a reasonable plan to continue treatment as recommended and confirmed by the treating professionals *to the satisfaction of this Court*. *Appellant's App.* at 26 (emphasis added). The evidence at the hearing established that Mother had been subject to random drug screening as part of her probation and had passed all of the screens. *Tr.* at 6. Mother underwent a substance abuse evaluation through DCCC and followed their recommendations, including meeting with a substance abuse counselor and being treated by a doctor at Meridian Services concerning her substance abuse issues. *Id.* at 11-12. Mother also obtained a mental health evaluation and had been treated for her mental health issues by a doctor since March 2016. *Id.* at 13. We conclude that Mother presented sufficient evidence to support the trial court's findings that she had met the third condition. Guardians' arguments to the contrary are

merely requests for this court to reweigh the evidence, which we cannot do. *In re M.N.S.*, 23 N.E.3d at 766.

[15] Under conditions four and five, Mother was required to show, to the satisfaction of the trial court, that: (1) she was making progress and had been healthy for a reasonable period of time, which included a showing that she is sober and mentally stable and not a danger to herself or to Child; and (2) she was committed to staying healthy and was able to care for and offer a stable environment for Child. While it is unclear whether Guardians are arguing that Mother failed to meet these conditions, there was sufficient evidence presented to support the trial court's findings that Mother met conditions four and five. As stated previously, Mother testified that she was seeing a substance abuse counselor and being treated by a doctor for her substance abuse issues and that she was being treated by a doctor for her mental health issues. *Tr.* at 11-13. Mother never missed any visitation with Child and had secure housing and stable employment. Mother's testimony demonstrated that she had made great effort to turn her life around and was committed to continuing her treatment. We, therefore, conclude that sufficient evidence was presented to show that Mother had met the conditions set forth in the order granting permanent guardianship.

[16] Because Mother sufficiently met her burden of showing that she satisfied the conditions set forth by the trial court, Guardians then had the burden to prove 'by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another.'" *In re M.N.S.*, 23 N.E.3d

at 766 (quoting *In re B.H.*, 770 N.E.2d at 27). In support of their contention that Child's best interests would be served by leaving Child in their care, Guardians contend that removing him from their care would be traumatic and point to testimony by Dr. Davis that it would be a "trauma" to terminate their guardianship. *Tr.* at 57. However, Guardians misstate Dr. Davis's testimony. She testified that an immediate removal from Guardians' care would be "another trauma" for Child, but did not give testimony that a gradual transition would have the same effect. *Id.* In its order terminating the guardianship, the trial court ordered a transition period to gradually increase Mother's parenting time with Child until she had full-time care of Child. *Appellant's App.* at 10-11. Additionally, there was also no testimony that transitioning Child back to Mother's care would be harmful because of his bond with Guardians.

[17] Guardians also assert that the trial court did not consider the passage of time and its effect on their bond with Child, specifically the finding from the order granting permanent guardianship that, "[i]f a long period of time has elapsed before Mother can show she is able to meet the above conditions, such period of time and the affect [sic] of such time on the Child will also be considered in determining modification and/or termination of the guardianship." *Appellant's App.* at 22. Guardians claim that they have had guardianship of Child for almost half of Child's life, and in its order terminating the guardianship, the trial court ignored the finding, in its previous order, regarding the passage of time. Mother filed her petition to terminate guardianship on November 25, 2015, which was less than one year after Child was placed with Guardians and

about six months after the order granting permanent guardianship was issued. After the petition was filed, Guardians filed three motions to continue the proceedings, which may have added to the length of the proceedings. Guardians do not point to any evidence how the lapse of time was of such great length that it would have been harmful to return Child to Mother's care, especially in light of the evidence that Mother filed her petition within one year of Child being placed with Guardians and six months of the permanent guardianship order and that Mother consistently had visitation with Child.

[18] Guardians next contend that the trial court did not give proper consideration to Mother's alleged lack of appreciation of and preparation for Child's psychological and behavioral issues. However, the trial court did specifically recognize Guardians' argument that Child's special needs would best be served by remaining in their care; it found that the evidence did not establish that Mother could not address Child's special needs and that the fact that Child had special needs did not "preclude [Mother] from the opportunity and the right to parent her child." *Appellant's App*. at 9-10. The trial court further found, because the Guardians had limited Mother's parenting time with Child and had no plan to increase Mother's time with Child, that it was difficult to determine whether Mother had the ability to properly care for Child and that Guardians had not given Mother an opportunity to demonstrate her ability to care for Child. *Id*. at 10. The evidence supported these findings by the trial court. We, therefore, conclude that Guardians did not carry their burden to overcome the

presumption in Mother's favor that Child's best interests are served by placement with her.[1]

[19]  Affirmed.

[20]  Mathias, J., and Altice, J., concur.

---

[1] Guardians make a brief reference in their conclusion to the fact that a guardian ad litem was not appointed in this matter with no citation to authority or argument. We conclude that any issue as to the failure to appoint a guardian ad litem is waived for failure to support their argument with cogent reasoning or citation to authority. Ind. Appellate Rule 46(A)(8)(a).