## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Dec 21 2018, 10:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANT PRO SE

Jesus M. Chacon
Chicago, Illinois

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Guardianship of A.D., Jesus M. Chacon, *Appellant-Petitioner,* | December 21, 2018 |
| | Court of Appeals Case No. 18A-GU-1604 |
| v. | Appeal from the Lake Superior Court |
| Madelyn Dearmond and Clyde De La Paz, Jr., *Appellees-Respondents* | The Honorable Thomas P. Stefaniak, Judge |
| | Trial Court Cause No. 45D06-1709-GU-132 |

**Baker, Judge.**

[1] Jesus Chacon brings this pro se appeal of the trial court's order denying his petition for a guardianship of his great-grandson, A.D. (Child). Chacon argues that the evidence does not support the denial of his petition. Finding the evidence sufficient, we affirm.

# Facts[1]

[2] Child was born to Madelyn Dearmond (Mother) and Clyde De La Paz, Jr. (Father), in 2009. Sometime in 2010, Father pleaded guilty to voluntary manslaughter and was incarcerated at the Pendleton Correctional Facility until November 2016.

[3] In 2011, Child, Mother, and Child's sibling (Sibling) began living with Chacon in Chicago. After two to three weeks, Mother left for a destination not revealed by the record. She left Child and Sibling in Chacon's care from 2012 through 2017, though she maintained a relationship with Child during these years. In August 2013, Mother signed a notarized document consenting to Chacon taking Child to medical appointments. No formal guardianship was ever sought or granted.

[4] While Father was incarcerated, Chacon took Child and Sibling to see Father at the penitentiary every two to three weeks. After Father's release on November

---

[1] Chacon has not filed an appendix or transcript in this appeal. Therefore, we must rely solely on the trial court's order for the recitation of the underlying facts.

Additionally, Chacon requested oral argument (though he did not file a motion to that effect). We hereby deny the request.

28, 2016, he and Mother moved into a home owned by Chacon in Whiting. In June 2017, Father relocated to Gary to live with his parents. At that time, there was a disagreement between Father, Mother, and Chacon about the custody of Child and Sibling. Mother and Father took Child with them to Gary and Chacon took Sibling home with him to Chicago. Chacon filed a petition for guardianship of Sibling in Chicago; that petition was denied and Sibling was returned to the care and custody of Mother and Father.

[5] On September 11, 2017, Chacon filed a petition for guardianship of Child.[2] Mother and Father contested the petition. On October 11, 2017, the trial court granted Chacon temporary guardianship of Child. Since that time, Child has been living with Chacon in Chicago, and Mother and Father have been exercising parenting time.

[6] The final guardianship hearing took place on December 20, 2017, and January 31, 2018. Chacon, Mother, and Father testified at the hearing. Chacon based his guardianship request on several factors:

- Mother's history of problems with alcohol, including a 2014 arrest for public intoxication.
- Child's educational and medical needs. Child has an Individualized Education Program (IEP) in Chicago and has been diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD) and is medicated for that condition.

---

[2] Chacon first filed the guardianship petition in Chicago; that petition was denied for lack of jurisdiction.

- Father's criminal history.

On April 30, 2018, the trial court issued an order denying the guardianship petition. The trial court made the following findings of fact:

24.    . . . Mother has had problems with alcohol abuse in the past but is currently receiving counseling for her dependency on alcohol. Mother submitted three (3) toxicology reports to the Court that showed Mother tested negative for any drugs on all three (3) reports but that Mother tested positive for alcohol on one (1) of the toxicology reports.

\*\*\*

27.    Mother testified that in August 2017, she enrolled Minor Child in [a charter school in Gary] and that he attended said school until he was returned to Great Grandfather in October of 2017. Mother testified that Minor Child was doing well at the charter school; that she did not believe that Minor Child needed an IEP; that she did not inform [the school] that Minor Child had had an IEP at his prior school or that Minor Child was diagnosed with ADHD and had been on medication for ADHD.

28.    Mother further testified that she did not believe that Minor Child needed counseling or medication and that she did not believe that Minor Child has ADHD; and, that she took Minor Child for a physical examination prior to the beginning of the school year. . . .

29.    Mother admitted that during the time that Minor Child attended the Chicago Public School system, she had no contact with any of Minor Child[']s teachers; had not gone

to any of Minor Child[']s parent-teacher meetings; had not made any inquiries regarding Minor Child[']s IEP; and, had not discussed Minor Child[']s progress with any of the school officials.

30. Mother works part-time at a nursing home.

*** 

32. Father testified that if given custody of Minor Child, he would take Minor Child to a doctor for further examination on his ADHD diagnosis and would follow the recommendations of said doctor.

33. Father testified that he will be on parole until 2019. Pursuant to Father[']s parole, Father has to submit to random drug testing, pay fees, be employed and not have any new arrests or charges.

34. Father testified that he has passed all of [the] random drug tests, that he is employed and has not had any violations of his parole.

35. Father testified that he was grateful for Great Grandfather[']s assistance while Father was incarcerated but that he was ready and able to care for Minor Child and no longer needed Great Grandfather[']s help.

Appellant's Br. p. 17-18.[3]  Based on its findings of fact, the trial court made the following conclusions of law:

> 2.  Given the facts and circumstances, the Court concludes that:
>
> a.  Mother and Father are willing and able to provide the proper and necessary care for Minor Child.
>
> b.  Mother and Father reside in a home with paternal grandparents along with [Sibling].
>
> c.  Mother and Father are both employed.
>
> d.  Mother voluntarily relinquished to Great Grandfather the custody and care of Minor Child from 2012 through 2017. . . . However, Mother continued to have some communication and contact with Minor Children.
>
> e.  In June 2017 through October 2017, Minor Child lived with Mother and Father, attended school, and appeared to be doing well.
>
> f.  Father did not voluntarily relinquish the custody and care of Minor Child while he was incarcerated from 2011 through 2016; and, during Father[']s incarceration, Great Grandfather traveled Five Hundred (500) miles round trip, every two (2) to

---

[3] Chacon did not file the appealed order as its own document and, as noted above, there is no appendix.  He instead appended the appealed order to his brief.  To ensure that the order is easily located, we will cite to its pagination within the Appellant's Brief.

three (3) weeks, at least One Hundred and Fifty (150) times, to take Minor Child and Sibling to see Father at the penitentiary thus enabling Father to continue to have a relationship with Minor Child throughout his incarceration. When Father was released from prison in 2016, father continued to have a relationship with Minor Child.

***

h. Although Minor Child was in the care of Great Grandfather for a majority of his young life, Minor Child has had continuing contact with Father and to some extent with Mother.

***

3. The Court finds and concludes . . . that it is in the best interest of Minor Child to be placed with Mother and Father for the following reasons:

a. Mother and Father have a stable home with Minor Child[']s sibling and paternal grandparents in Gary, Indiana.

b. Mother is employed part-time at a nursing home.

c. Father is employed and is abiding by all of his parole conditions . . . .

d. Minor Child had continued contact with Father throughout Father[']s incarceration.

e.     Minor Child lived with Mother and Father from June 2017 through October 2017 and was enrolled in school.

f.     Mother and Father have demonstrated an ability to more than adequately meet the needs of Minor Child and to provide sufficient support.

g.     While Father was incarcerated, Great Grandfather maintained a stable lifestyle for Minor Child, which allowed Minor Child to thrive and properly develop physically, cognitively, and socially.

*Id.* at 18-19. The trial court denied the petition, ordered that Child be returned to his parents' care and custody immediately, and ordered that the parents inform Child's school about the IEP, request an assessment at his school, and follow the recommendations of the assessment. The trial court also ordered grandparent visitation with Child one Sunday per month. Finally, the trial court ordered that the parents ensure that Child takes his prescribed ADHD medication, take Child and his medical records (to be provided by Chacon) to a doctor for a complete medical assessment, and comply with the doctor's recommendations. Chacon now appeals.

## Discussion and Decision

[7]     Chacon argues, essentially, that the evidence does not support the trial court's order denying his guardianship petition. Generally, all guardianship findings, orders, and proceedings are committed to the sound discretion of the trial court. Ind. Code § 29-3-2-4(a). Moreover, there is a strong preference for granting

latitude and deference to our trial judges in family law matters. *In re Guardianship of I.R.*, 77 N.E.3d 810, 813 (Ind. Ct. App. 2017). Because Chacon had the burden of proof at the guardianship hearing, he is appealing from a negative judgment, meaning that he must show on appeal that the evidence points unerringly to a conclusion opposite that reached by the trial court. *In re J.C.*, 735 N.E.2d 848, 849 (Ind. Ct. App. 2000). We will reverse a negative judgment only if it is contrary to law, and in making our determination, we will neither reweigh the evidence nor assess witness credibility and will consider only the evidence and inferences most favorable to the prevailing party. *Id.*

[8] Our Supreme Court has explained that we review child placement disputes between natural parents and third parties with a strong presumption in favor of placement with the parents:

> Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant

advantage to the child. The presumption will not be overcome merely because a third party could provide the better things in life for the child. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review.

*In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002) (internal quotation marks and citation omitted).

[9] Chacon's argument focuses solely on questioning the parents'—primarily, Mother's—truthfulness and credibility, citing to evidence outside the record, and describing events that have apparently taken place since the appealed order was entered. We may not and will not base our ruling on any of these arguments. Moreover, as noted above, there is neither a transcript nor an

appendix included in the record on appeal; consequently, we are left only with the appealed order itself to review.[4]

[10] The trial court found, based on the evidence before it, that Mother and Father are both employed, that Father is complying with the terms of his parole, that they have a stable home, that they each (to varying degrees) maintained relationships with Child during the years he lived with Chacon, and that Child was well cared for during the months he lived with his parents. Given these findings and the strong presumption in favor of placement with natural parents, we cannot say that the trial court erred by denying Chacon's guardianship petition.

[11] Child (and his parents) are very lucky that Chacon was able and willing to step in as his custodian during the years when the parents were absent. Chacon is clearly acting with sincere love and concern for Child. But at this point, the trial court found that it is time for Child's parents to step back in and resume their roles as his caregivers. Nothing in Chacon's brief or the trial court's order leads us to conclude that this decision was erroneous.

---

[4] We note that to the extent that Chacon argues that Mother and Father have not complied with the trial court's orders regarding Child's IEP and ADHD medication, the proper course of action would be to file a motion with the trial court. This Court is unable to review such claims.

The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.