

**FILED**

Dec 12 2019, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David Paul Allen
Hammond, Indiana

ATTORNEY FOR APPELLEES

R. Cordell Funk
Funk & Wendlinger, LLC
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Guardianship of A.Y.H. (Minor
Child)

Yahya Hemaid (Father),

*Appellant-Petitioner,*

v.

Rosegina Wheeler and Randall
Wheeler (Guardians),

*Appellees-Respondents*

December 12, 2019

Court of Appeals Case No.
19A-GU-1759

Appeal from the Lake Superior
Court

The Honorable Alexis Vazquez
Dedelow, Special Judge

Trial Court Cause No.
45D06-1110-GU-152

**Crone, Judge.**

## Case Summary

[1] Yahya Hemaid ("Father") appeals the trial court's denial of his petition to terminate a permanent guardianship order designating Rosegina Wheeler and Randall Wheeler (collectively "Guardians") as guardians of his eight-year-old child A.Y.H. ("Child"). We affirm.

## Facts and Procedural History

[2] Child was born to Father and Robynleigh Hemaid ("Mother") in October 2010. Shortly after his birth, he began living with Guardians, who are his maternal great aunt and uncle. Father was incarcerated from February 2011 through February 2012. In October 2011, Guardians filed a petition for permanent guardianship, and Mother signed a consent to the appointment. The trial court issued a permanent guardianship order in November 2011. In February 2012, Mother and Father dissolved their marriage. In the ensuing three years, neither Mother nor Father visited or provided financial support for Child.

[3] In 2015, Father filed a petition to terminate the guardianship. The matter remained unresolved until November 2017, when Father and Guardians executed an agreed order pursuant to which Guardians agreed to forgo pursuing adoption of Child, and the parties agreed that the guardianship would continue until Child's eighteenth birthday. The agreed order also provided that Father would have phased-in parenting time that would eventually lead to parenting time pursuant to the Indiana Parenting Time Guidelines, with overnight and alternating-weekend visits.

On November 5, 2018, Father filed a second petition to terminate the guardianship. The trial court conducted hearings over two days, after which the parties submitted proposed findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). On July 3, 2019, the trial court issued an order with findings of fact and conclusions thereon denying Father's petition to terminate the guardianship. Father now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Father asserts that the trial court erred in denying his petition to terminate the guardianship. Guardianship proceedings are guided by Indiana Code Section 29-3-12-1(c)(4), which reads, "The court may terminate any guardianship if … the guardianship is no longer necessary[.]"

We review the trial court's order in guardianship proceedings for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *In re Guardianship of M.N.S.*, 23 N.E.3d 759, 765-66 (Ind. Ct. App. 2014). Where the trial court issues findings of fact and conclusions thereon, we typically employ a two-tiered standard of review, determining first whether the evidence supports the findings and then whether the findings support the judgment. *In re Guardianship of L.R.T.*, 979 N.E.2d 688, 689 (Ind. Ct. App. 2012), *trans. denied* (2013). While we review the trial court's conclusions de novo, we will not set aside the findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced

that a mistake has been made. *In re Guardianship of B.W.*, 45 N.E.3d 860, 866 (Ind. Ct. App. 2015). In conducting our review, we neither reweigh evidence nor reassess witness credibility but rather consider the evidence and reasonable inferences most favorable to the judgment. *Matter of Guardianship of I.R.*, 77 N.E.3d 810, 813 (Ind. Ct. App. 2017).

[7]     As a preliminary matter, we note that Father has not provided us a copy of the transcript of the trial court proceedings. Indiana Appellate Rule 9(F)(5) requires the appellant's Notice of Appeal to include "[a] designation of all portions of the Transcript necessary to present fairly and decide the issues on appeal." Rule 9(F)(5) also specifies that "[i]f the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all the evidence." Father claims that he intentionally omitted the transcript because he does not challenge the sufficiency of the evidence supporting any of the findings. However, he lists certain findings in his brief and asserts that they are incomplete, insufficient, or incorrect. We have no basis for evaluating such claims, given the deficient record before us. Thus, Father has waived any allegations of error pertaining to the accuracy and/or adequacy of the findings. *See Lifeline Youth & Family Servs., Inc. v. Installed Bldg. Prods., Inc.*, 996 N.E.2d 808, 814 (Ind. Ct. App. 2013) ("Although not fatal to the appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence.") (quoting *In re Walker*, 665 N.E.2d 586, 588 (Ind. 1996). Accordingly, we limit our discussion to whether the findings

support the judgment. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*.

[8]     The trial court found in pertinent part as follows:[1]

> 4. [M]ore than three years after this Court had appointed Guardians over Child, Father filed a Motion to Terminate Guardianship.
>
> 5. On November 3, 2017, the parties filed an Agreed Order wherein "the guardians agree not to seek an adoption based on either parent's failure to visit or support" and "the guardianship shall remain in place until Child reaches the age of eighteen (18)." Furthermore, the Agreed Order set out Father's parenting time to be phased in for a period of eight (8) weeks, after which Father would have parenting time pursuant to the Indiana Parenting Time Guidelines.
>
> 6. On November 5, 2018, Father filed a Petition to Terminate Guardianship[.]
>
> ….
>
> 8. Child is eight (8) years old and has lived with Guardians since birth.…
>
> 9. Father spent twelve (12) months in Lake County Jail commencing in February of 2011.…
>
> 10. Father … did not file his first Motion to Terminate Guardianship until March 2015, more than two years after his

---

[1] To the extent that the trial court used proper names or other designations for the parties, for consistency's sake, we refer to them as previously designated.

release from jail.

11. Father did not see Child for approximately six (6) years, from the time he was incarcerated in 2011 until December of 2017. Father did not provide child support for Child throughout those six (6) years.

….

13. Pursuant to the parties' Agreed Order … Father began his phased in parenting time in December 2017. After Father saw Child at Guardian's (sic) home, Father had …. [several] day time visits with Child …. [and] overnight visits of two or more days about 20 times; which included, some extended overnights of three to five days.…

14. Prior to the phased in parenting time that began in December 2017, Child had not seen or heard from Father since he was less than a year old. Child is experiencing issues adjusting to seeing Father for the first time since he was an infant …. Child is currently in counseling …. Father was invited to participate with said counseling, but only attended one session. Father believes that Child's counselor is biased and Father did not want to continue to participate with Child's counseling.

15. Child also participates in counseling with his school counselor.…

16. …. Father has … told Child that he will take him to the police if he does not behave.

….

18. Although Father has access to the teachers and counselors at school, Father has not reached out to either teachers or Child's school counselor.… Father has also had the opportunity to meet with Child at school and have lunch with Child but Father has

not participated in said lunch. Guardians have provided Father with medical records and school records.

19. Child has been in the care of Guardians since birth. Guardians have provided the day-to-day care of Child and have supported Child since birth. Child has bonded well with Guardians and is thriving in their care.

Appealed Order at 1-3. Because Father has waived any challenge to the findings, they stand as proven. *See McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged findings are accepted as true).

[9] As we consider whether the trial court's findings support the judgment, we are mindful that Father's appeal involves a parent seeking to gain custody of his child, who has been under the guardianship of a third party/nonparent. As such, we note the following with respect to the relative burdens of the parties:

> Indiana courts have long held that even when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent … rather, the burden of proof is always on the third party. There is a strong presumption that a child's interests are best served by placement with the natural parent. A parent's burden to show a modification of custody is justified is minimal, and after meeting this minimal burden of persuasion to terminate the guardianship, the third party has the burden to prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another.

*I.R.*, 77 N.E.3d at 813 (citations, quotation marks and brackets omitted).

In determining whether the third party has presented clear and convincing evidence sufficient to overcome the presumption in favor of the natural parent, the trial court will consider evidence presented by the third party as to the parent's "(a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger" the child's future happiness. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 459 (Ind. 2009) (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 286 (Ind. 2002)). But the trial court's inquiry is not limited to these three factors. *B.H.*, 770 N.E.2d at 287. Ultimately, the court's determination must rest on "whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome" by the third party's evidence concerning the child's best interests. *Id.*

With respect to the trial court's conclusions of law, Father first contends that the trial court committed reversible error by failing to specify in its order that the Guardians were subject to a "clear and convincing" standard of proof. However, the case that he cites does not support the proposition that the trial court must specify the standard of proof in its findings or conclusions. *See M.N.S.*, 23 N.E.3d at 766 (stating that third party must meet clear and convincing evidence standard of proof). Thus, the case cited by Father does not support the proposition for which it was cited, and he therefore has waived this allegation of error by failing to support his proposition with a citation to relevant authority as required by Indiana Appellate Rule 46(A)(8). Even so, we

note that trial courts are presumed to have considered the relevant factors and followed the applicable law, and the party challenging the trial court's conclusion must overcome this strong presumption. *Del Priore v. Del Priore*, 65 N.E.3d 1065, 1072 (Ind. Ct. App. 2016), *trans. denied* (2017).

[12] Father also challenges paragraphs 6 and 7 of the trial court's conclusions, essentially claiming that they are more accurately characterized as findings of fact, which he claims to be inaccurate, incomplete, or inconsistent with the court's labeled findings. As discussed, the findings themselves stand as proven due to Father's waiver for failing to request a transcript of the proceedings below. Notwithstanding, we find these paragraphs to be ultimate findings/conclusions – the application of the relevant facts to the law – which trial courts commonly include in their comprehensive orders.[2] In short, paragraphs 6 and 7 list the salient reasons for the trial court's decision to deny Father's termination petition. These include: Father's failure to visit and failure to support Child for nearly seven years of his eight-year life; Father's acquiescence by failing to challenge the guardianship for three years after his

---

[2] Father's briefs include vitriolic language impugning the motives of both the trial court and Guardians. *See, e.g.*, Appellant's Br. at 25 ("it cannot be reasonably maintained that the deficiencies in the trial court's conclusions of law were inadvertent."); Reply Br. at 7 ("A rational inference is that the trial court knew full well the mentioned legal standards but failed to mention them for the want of evidence satisfying those standards."); *id.* at 6 ("Guardians have taken indecent liberties with Father's Argument."); *id.* at 5-6 ("[The Agreed Order's existence is testament to the vileness of extracting such a concession from a noncustodial Father"). We remind counsel that the purpose of appellate briefs is to present this Court with concise arguments supported by statutory law, case law, and the record. Ind. Appellate Rule 46(A)(8). "Invectives are not argument, and have no place in legal discussion …." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 301 n.3 (Ind. Ct. App. 2014) (quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.*, 166 Ind. 466, 468, 77 N.E. 941, 942 (1906)), *trans. denied*.

release from jail; Father's failure to communicate with Child until the agreed order was executed in 2017; Child's confusion, fear, and emotional problems that resulted from Father repeatedly telling him during parenting time that he would be removed from Guardians and would come to live with him soon; the fact that Guardians are the only parents Child has ever known; the strong bond between Child and Guardians that is "so interwoven that to attempt to uproot [] Child from his home environment would seriously mar and endanger the safety and stability of [] Child"; Guardians' stable lifestyle, which allows Child to "thrive and properly develop physically, cognitively, and socially"; and the detriment to Child's mental and emotional health and development if removed from Guardians. Appealed Order at 4-5.

[13] In sum, the trial court's findings and conclusions support the strong presumption that the trial court followed the applicable law and employed the presumption favoring the natural parent over the third parties but simply rendered a decision that is contrary to Father's desired outcome. We find no abuse of discretion in the trial court's denial of Father's petition to terminate the guardianship.[3] Accordingly, we affirm.

---

[3] Because we find no abuse of discretion in the trial court's decision, we need not address Guardians' alternate argument that Father is contractually bound by the agreed order's provision that the guardianship shall continue until Child is eighteen.

Affirmed.

May, J., and Pyle, J., concur.