# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JIM BRUGH**
Logansport, Indiana

ATTORNEY FOR APPELLEES:

**DAN J. MAY**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE PATERNITY OF N.T. | ) |
| | ) |
| B.T., | ) |
| | ) |
|     Appellant, | ) |
| | ) |
|        vs. | )    No. 09A02-1108-JP-693 |
| | ) |
| D.K. and K.K., | ) |
| | ) |
|     Appellees. | ) |

### APPEAL FROM THE CASS CIRCUIT COURT
The Honorable Leo T. Burns, Judge
Cause No. 09C01-9906-JP-26

**February 8, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

B.T. (Father) brings this interlocutory appeal from an order of the Cass County Circuit Court (the paternity court) granting K.K.'s (Stepfather) motion for change of venue from the judge. Father contends that, although subject to contempt proceedings, Stepfather is not a party to the underlying paternity action and is not entitled to a change of venue from the judge pursuant to Indiana Trial Rule 76.

We reverse and remand.

D.K. (Mother) and Father are the parents of N.T., born in July 1999. Mother's successful attempts to frustrate and deny visitation to Father through December 2007 are well documented in the record. In particular, our prior memorandum decision recounts in detail the egregious actions of Mother and Stepfather and the emotional harm inflicted on N.T. while the two hid the child from Father and the State from August 2003 to December 2007 to evade a change of custody order issued by the paternity court. *See In re Paternity of N.T.*, Cause No. 09A02-0810-JV-883 (June 5, 2009).

Mother was located and arrested[1] by Kokomo police on December 3, 2007, and the child was taken into protective custody by the Grant County Department of Child Services. CHINS proceedings were initiated, and a custody determination in the paternity action was held in abeyance until the conclusion of the CHINS case. During the pendency of the CHINS case, on February 18, 2008, the paternity court admitted Mother to bail with the condition that she have no contact with N.T. until further order of the court. The paternity court modified the contempt bond conditions on September 23, 2008, adding the condition that Stepfather have no contact with the child and denying Mother's request for supervised

visitation as allowed by the CHINS court.

In a memorandum decision, issued June 5, 2009, this court affirmed the paternity court's bond modification order. Among other things, we upheld the court's additional condition place upon Mother's bail that, in light of Stepfather's active participation in her contempt of the 2003 court order, Stepfather have no contact with N.T. In this regard, we explained:

> [W]e observe that "[o]ne not a party who has knowledge of a court order but nevertheless aids, conspires with, and abets a party to an action in violating a court order entered therein, may be punished for contempt." *Owen v. Vaughn*, 479 N.E.2d 83, 86 (Ind. Ct. App. 1985). The evidence clearly establishes that Step-father was aware of the paternity court's order that Mother relinquish custody of N.T. to Father and actively participated in hiding N.T. from Father and the paternity court for approximately four years. In light of these facts, we conclude that the paternity court did not abuse its discretion in extending to Step-father the no-contact order issued as a condition to Mother's bail for her contempt of the court's order.

*In re Paternity of N.T.*, s*lip op.* at 8-9.

In September 2010, the paternity court resumed jurisdiction and set all pending matters for trial. Father then filed, on November 4, a supplemental application for contempt citation against Stepfather for his active participation in Mother's violation of the 2003 order. Father asked the court to "consider whether Step-father's conduct was contemptuous and noted that Father had incurred legal fees in efforts to gain control over the child, including but not limited to, participation in the CHINS proceeding". *Appendix* at 62. Stepfather was not served with the application for contempt until March 9, 2011. Thereafter, on April 6, 2011, Stepfather filed a motion to dismiss and a motion for change of venue from the judge.

---

[1]  Mother was arrested on criminal charges and for contempt.

Following a hearing, the paternity court granted Stepfather's motion for change of venue from the judge on May 20, 2011. Specifically, the court concluded that service of Father's application for contempt prompted Stepfather to actively protect his rights and defend the action and, thus, resulted in joining him as a party in the paternity proceeding. As a party, the court reasoned that Stepfather had a right to change of venue from the judge pursuant to T.R. 76. Father filed a motion to reconsider, which the paternity court denied following another hearing on the matter.

Upon Father's motion, the trial court certified the May 20, 2011 order for interlocutory appeal. We accepted jurisdiction of the appeal pursuant to Ind. Appellate Rule 14(B) on September 2, 2011.

Father contends the paternity court incorrectly concluded that Stepfather was automatically joined as a party to the paternity action once he was served with Father's application for contempt citation. He argues that Stepfather is a nonparty who is subject to contempt sanctions. Stepfather, on the other hand, contends that the application served upon him was for civil contempt (as opposed to criminal contempt) and he should be afforded "all the procedural rights of an original [civil] litigant, including the right to a timely change of venue from the judge." *Appellee's Brief* at 7.

Indiana trial courts have inherent authority to enforce their orders through contempt powers, even against nonparties. *See Owen v. Vaughn*, 479 N.E.2d 83. *See also La Grange v. State*, 153 N.E.2d 593 (Ind. 1958). "This power is essential to the existence and functioning of our judicial system, and the legislature has no power to take away or materially impair it." *La Grange v. State*, 153 N.E.2d at 595. Although the legislature has

4

regulated the exercise of this inherent contempt power by prescribing rules of practice and procedure, the statutory definitions of contempt are "not so all-inclusive as to exclude other acts or conduct which may constitute contempt." *Id.* at 596.

In this case, Stepfather's focus on whether criminal or civil contempt has been alleged against him is misplaced. As our Supreme Court has explained, contempt "is a *sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt." *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990). *See also Mitchell v. Stevenson*, 677 N.E.2d 551 (Ind. Ct. App. 1997) (noting that civil and criminal contempts can arise out of the same conduct and are, therefore, not readily distinguishable), *trans. denied*.[2]

In *Owen v. Vaughn*, we held that the trial court had personal jurisdiction over a stepfather "for contempt purposes even though he was not a party to the [dissolution] action." 479 N.E.2d at 86. In so holding we explained:

> Owen had personal knowledge of these proceedings. He was physically present at all the hearings regarding visitation. He was personally ordered not to interfere by Judge Vaughn, and later personally named along with his wife, Sandy, in the judge's order of November 6, 1981…. One not a party who has knowledge of a court order but nevertheless aids, conspires with, and abets a party to an action in violating a court order entered therein, may be punished for contempt.

*Id.* (citations omitted).

---

[2] "The disobedience of a court order may be categorized as either civil contempt or criminal contempt." *Mitchell v. Stevenson*, 677 N.E.2d at 560. A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party, here Father. *See Mitchell v. Stevenson*, 677 N.E.2d 551. Thus, any type of penalty imposed must be coercive or remedial in nature. *Id.* In contrast, criminal contempt is an act directed against the authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. *Id.* The penalty imposed for criminal contempt, thus, is for the benefit of the State and is punitive in nature in order to vindicate the authority of the court. *Id.*

We observe that this case is before us on interlocutory appeal, therefore our review is limited to the order granting change of venue from judge, and we express no opinion with regard to the propriety of finding Stepfather in contempt. Rather, we simply hold that the paternity court has the inherent power to subject nonparties to contempt proceedings for violation of its orders.

Moreover, we cannot agree with Stepfather and the trial court that service of Father's application for contempt elevated Stepfather to the status of a party in the underlying civil action entitling him to a change of venue from the judge pursuant to T.R. 76. This is not to say, however, that Stepfather is not entitled to due process. To be sure, an indirect contempt, which is at issue here, requires an array of statutorily prescribed due process protections, including notice and the opportunity to be heard. *See* Ind. Code Ann. §§ 34-47-3-5 through -7 (West, Westlaw through 2011 1st Regular Sess.). *See also Mitchell v. Stevenson*, 677 N.E.2d at 560 ("[w]here the conduct is categorized as civil contempt or criminal, the trial court must still provide the defendant with the same statutorily prescribed due process requirements"). On remand, Stepfather will be entitled to these statutory due process protections in any contempt proceedings before the paternity court.

Reversed and remanded.

RILEY, J., and MATHIAS, J., concur.