## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Christina N. Bowman
Fort Myers, Florida

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christina Nicole Bowman, *Appellant-Petitioner,* | December 10, 2020 |
| v. | Court of Appeals Case No. 20A-JP-934 |
| | Appeal from the Hamilton Superior Court |
| Robert Allen Browne, *Appellee-Respondent.* | The Honorable Timothy B. Day, Judge |
| | The Honorable Darren J. Murphy, Magistrate |
| | Trial Court Cause No. 29D01-1606-JP-787 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Christina Bowman (Mother), appeals the trial court's March 26, 2020, Order on All Pending Matters (March 26, 2020 Order) in favor of Appellee-Respondent, Robert Browne (Father).

Affirmed.

# ISSUES

Mother presents four issues on appeal, which we restate as:

(1) Whether the trial court's decision to retain jurisdiction is clearly erroneous;

(2) Whether the trial court's grant of Father's, and denial of Mother's, rule to show cause motions are clearly erroneous;

(3) Whether the trial court's determination that the parties should continue to exercise joint legal custody is clearly erroneous; and

(4) Whether the trial court's denial of Mother's request to apply the modification of Father's child support obligation retroactively was clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

On January 26, 2010, daughter I.B. (Child) was born to Father and Mother. On May 6, 2010, Father's paternity was established by the Decatur County circuit court by means of an agreed entry. Mother and Father were awarded

joint legal custody, with primary physical custody of Child with Mother. Father was to exercise parenting time, and a child support order was entered.

[5] In 2015, Mother desired to relocate with Child to Florida. Father objected. On September 8, 2015, after a hearing, the trial court approved Mother's relocation and ordered that Father would have parenting time during Child's breaks from school. The trial court ordered "[b]oth [p]arties will work to improve communication" and that they would continue to exercise joint legal custody. (Appellant's App. Vol. II, p. 48).

[6] Through the remainder of 2015 and the spring of 2016, the parties litigated child support and parenting time matters in Indiana. On May 31, 2016, the trial court approved an agreement, executed by Mother and Father (May 31, 2016 Order), on child support and parenting time that contained the following relevant provision:

> 4. Continuing Jurisdiction of the Court. Neither party currently lives in Decatur County, Indiana. The Decatur County Clerk shall transfer venue of this matter to Hamilton County, Indiana. The custody and parenting time provisions provided for in this Agreement are subject to the continuing jurisdiction of the Hamilton County Court and may be reviewed from time to time upon petition of either party as circumstances and the best interests of [Child] may require.

(Appellant's App. Vol. II, p. 51). In addition to agreeing to a decrease in Father's support obligation occasioned by Mother's and Child's move to Florida, the parties agreed to continue to share joint legal custody.

[7] With Father's approval, Mother enrolled Child in first grade in public school in Florida. Child had difficulty reading at grade level and was reluctant to attend school. Within two weeks of beginning the first grade, Mother ceased requiring Child to attend school, and Mother subsequently withdrew Child from school without informing Father or obtaining his approval. After Father filed a motion for rule to show cause, Child was assessed as being at-risk for a reading disability. On December 16, 2016, after a hearing, the trial court found Mother in contempt of the May 31, 2016 Order to share joint custody by unilaterally withdrawing Child from public school to homeschool her. Finding that Mother had "abdicated her parental role concerning [Child's] education by allowing [Child] to dictate when [C]hild gets up in the morning and choose which subjects she wants to learn," the trial court ordered Mother to re-enroll Child in public school to better address her reading needs. (Appellant's App. Vol. II, p. 63). The trial court denied Father's request for a change in physical custody and Mother's request to grant her sole legal custody. The trial court assessed Mother attorney's fees but did not otherwise sanction her for being in contempt.

[8] On October 13, 2017, Mother filed a verified petition in Lee County, Florida, seeking to transfer jurisdiction of the matter to Florida and to modify legal custody to rest solely in Mother. Mother provided notice to the Florida court of the open paternity/custody case in Indiana. In response, Father filed a motion for rule to show cause seeking to have Mother held in contempt for attempting to circumvent the trial court's orders by filing her petition to modify custody in Florida and by failing to provide notice to Father of twenty-one doctor's visits

by Child between September 1, 2016, and October 31, 2017. Additionally, Father averred that Child did not have any mental health issues before moving to Florida with Mother and that Child's frequent therapy sessions were negatively affecting her education by causing her to miss school. As a result, Father sought a change in physical custody. On December 5, 2017, the trial court issued an order stating that it had continuing jurisdiction over the matter which it was not relinquishing and setting the matter for a hearing on February 16, 2018. Mother then filed an amended petition in the Florida court seeking to have a judicial case management conference held between the Florida and Indiana courts to determine jurisdiction. On January 4, 2018, Mother filed a separate motion in Florida acknowledging that Indiana currently had jurisdiction but seeking to present evidence and argument at a judicial case management conference so that jurisdiction could be determined. On February 5, 2018, Mother filed her Verified Motion to Clarify Orders Regarding Legal Custody; Motion for Rule to Show Cause; and Reply to [Father's] Motion for Rule to Show Cause in which she averred that Child had been diagnosed with developmental dyslexia; Child's school recommended an extended school year for Child during the summer; despite his agreement to procure education services for Child during summer parenting time, Father had failed to do so; Father failed to communicate with Mother regarding Child's special education needs; and Father refused to have Child assessed for further educational services. Because of these circumstances and the parties' joint custody, Mother averred that Child's school could not further address Child's needs. Mother sought sole legal custody. Mother also averred that Father's wife (Wife)

interfered with the parties' communication in contravention of the May 31, 2016 Order's provision that communication should be between the parties. In response to Father's rule to show cause motion, Mother claimed that she had filed her Florida motion to modify custody based on legal advice and had voluntarily dismissed the motion based on other legal advice such that the matter was moot and "not contemptuous." (Appellant's App. Vol. II, p. 202). Mother also averred that the twenty-one doctor's appointments were for therapy. Mother requested that the trial court order Father to permit Child's school to evaluate her, set specific guidelines and time limits for making joint legal decisions, and order that all communication be only between the parties through an electronic communication application. On February 25, 2018, Mother filed a motion requesting that the trial court review jurisdiction in this matter and transfer it to the Florida courts based on a variety of factual matters she claimed rendered Indiana an inconvenient forum. Mother further provided in her petition that if the Indiana court wished to resolve all pending matters before transferring jurisdiction, she should be allowed to have her witnesses appear telephonically. On February 28, 2018, in response to Mother's motions and petitions, Father objected to a change in jurisdiction, requested Mother's jurisdictional petition be dismissed, or, in the alternative, that the jurisdictional issue be bifurcated and the other issues be addressed at a later hearing. Father also requested that child support be modified to $140 per week. On April 5, 2018, a guardian ad litem (GAL) was appointed for Child. On November 15, 2018, Mother filed an amended motion for rule to show cause in which she alleged that, in contravention of the May 21, 2016 Order, during 2018 summer

parenting time Father traveled Las Vegas, Nevada, with Child without providing advance notice to Mother and, during the same period, he unilaterally failed to provide therapy for Child.

[9] A July 9, 2018, hearing was rescheduled by joint agreement so that the GAL report could be completed and received by the parties. On November 26, 2018, after a hearing where evidence and argument were presented, the trial court denied Mother's motion to reconsider jurisdiction. The trial court held additional hearings in this matter on December 6, 2018, March 28, 2019, and February 3, 2020. Seven witnesses appeared telephonically from Florida, including Betsy West, Child's second grade teacher, Bertolo Bermudez, who had worked with Child on reading and ran meetings related to her educational needs, Dr. Laurie Guager, Child's language pathologist who had diagnosed her with dyslexia in 2017, and Luis Navarrette, Mother and Child's therapist. After the conclusion of the final hearing, the parties submitted their proposed findings of fact and conclusions of law as well as a summary of their respective requests.

[10] On March 26, 2020, the trial court issued its Order on All Pending Matters in which it entered additional findings regarding its retention of jurisdiction. The trial court found Mother in contempt of the May 31, 2016 Order for filing her October 13, 2017 Florida petition and for failing to communicate and agree with Father regarding the twenty-one doctor's visits. Because it was the second occasion that the trial court was finding Mother in contempt of its orders, the trial court ordered Mother to pay $2,500 to Father. The trial court denied Mother's request for sole legal custody, denied Mother's rule to show cause

motions based on Wife's alleged interference, Father's summer 2018 out-of-state travel with Child, and Father's alleged failure to provide therapy for Child. The trial court also declined Mother's request to make the child support increase retroactive and ordered that no arrearage would be created by the change in support.

[11] Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

*I. Standard of Review*

[12] Mother challenges the trial court's March 26, 2020 Order in which it entered findings of fact and conclusions of law following the parties' submission of proposed orders and summaries of requests. Our standard of review of a trial court's findings and conclusions entered pursuant to Indiana Trial Rule 52(A) is well-settled and prohibits us from setting aside a trial court's judgment unless it is clearly erroneous. *In re Paternity of B.B.*, 1 N.E.3d 151, 160 (Ind. Ct. App. 2013). In conducting our review, we consider whether the evidence supports the findings and whether the findings support the judgment. *Id.* Findings are only clearly erroneous when there is no evidence in the record to support them, and a judgment is clearly erroneous when it applies the incorrect legal standard of properly-found facts. *Id.* In making this determination, we consider only the evidence which supports the trial court's judgment along with all reasonable inferences in favor of the judgment, and we will not reweigh the evidence or reassess the credibility of the witnesses. *Manis v. McNabb*, 104 N.E.3d 611, 617

(Ind. Ct. App. 2018). In addition, we defer to the judgment of the trial court in family law matters, as the trial court had the advantage of observing the witnesses first-hand. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). In accordance with that deference, we will not substitute our own judgment for that of the trial court's simply because the evidence may support some other conclusion. *Id.*

[13]  As a preliminary matter, we observe that Father has failed to file an appellee's brief. We do not undertake developing arguments for an appellee who does not file a brief. *Edwards v. Edwards*, 132 N.E.3d 391, 395 (Ind. Ct. App. 2019), *trans. denied*. Rather, in such cases, we will reverse if the appellant establishes *prima facie* error, meaning error at first sight or on the face of it. *Id.* "However, even in light of this relaxed standard, we still have the obligation to correctly apply the law to the facts in the record to determine whether reversal is required." *Id.* If the appellant does not meet her burden to show *prima facie* error, we will affirm. *In re Paternity of C.N.S.*, 901 N.E.2d 1102, 1105 (Ind. Ct. App. 2009). We also observe that Mother appears *pro se*, which is her right. However, a "*pro se* litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014).

## II. *Jurisdiction*

[14]  Mother argues that the trial court erred in denying her motion to transfer jurisdiction to Florida. Indiana has adopted the Uniform Child Custody Jurisdiction Act (UCCJA), which governs interstate custody disputes. *See* Ind.

Code 31-21-5 *et seq*. "One purpose of the UCCJA is to prevent parents from seeking custody in different jurisdictions in an attempt to obtain a favorable result." *Wilkinson v. Assante*, 107 N.E.3d 1074, 1077 (Ind. Ct. App. 2018). Pursuant to the UCCJA, once a trial court is aware of an interstate dimension in a child custody dispute, the trial court has an affirmative duty to determine if it has jurisdiction and, if it does, whether it should exercise its jurisdiction. *Id*. We review a trial court's jurisdictional determination for an abuse of discretion. *Id*.

[15] Under the UCCJA, an Indiana court that renders an initial custody determination retains exclusive, continuing jurisdiction over the matter until it determines that neither the child nor the child's parents has a significant connection with Indiana or until an Indiana court or a court of another state determines that the child and the child's parents do not presently reside in Indiana. I.C. § 31-21-5-2(a). A child's parent retains a 'significant connection' with Indiana for purposes of the UCCJA when that parent resides in Indiana. *In re Custody of A.N.W.*, 798 N.E.2d 556, 562 (Ind. Ct. App. 2003), *trans. denied*. A trial court with jurisdiction over a child custody dispute may, nevertheless, decline to exercise its jurisdiction if it determines that it is an inconvenient forum and that a court of another state is more convenient. I.C. § 31-21-5-8(a). In rendering its determination, a trial court considers the following non-exhaustive list of factors:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state is best able to protect the parties and the child.

(2) The length of time the child has resided outside Indiana.

(3) The distance between the Indiana court and the court in the state that would assume jurisdiction.

(4) The relative financial circumstances of the parties.

(5) An agreement of the parties as to which state should assume jurisdiction.

(6) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

I.C. § 31-21-5-8(b); *Tamasy v. Kovacs*, 929 N.E.2d 820, 827 (Ind. Ct. App. 2010).

[16] Here, the Decatur County circuit court entered the original custody order, and, at the November 26, 2018, hearing, the trial court found that Father continued to live in Indiana. Thus, we conclude that the Indiana courts were vested with exclusive and continuing jurisdiction in this matter because the initial custody order was issued in this state and Father continued to maintain a 'significant

connection' with the state by continuing to reside here. I.C. § 31-21-5-2(a); *In re Custody of A.N.W.*, 798 N.E.2d at 562.

[17] Furthermore, at the November 26, 2018, hearing, the trial court considered the factors enumerated in section 31-21-5-8(b) and found that Child had been living in Florida for approximately three years; Indiana and Florida are separated by great distance; Mother earned more than Father; the May 31, 2016 Order provided that jurisdiction would remain in Indiana; the GAL could testify regarding Child; although most of the witnesses pertinent to Child's health were located in Florida, the evidence that could be presented through Child's medical records was adequate; it remained to be determined how information regarding Child's educational issues could be presented in Indiana; and that the Indiana trial court's ability to entertain matters involving Florida law was not an impediment to exercising jurisdiction. The trial court further found that no other Florida court had jurisdiction and the parties had eight pending motions in Indiana. In its March 26, 2020 Order, the trial court entered the following additional relevant findings of fact and conclusions thereon:

> 23. On February 25, 2018, several months after appealing directly to Florida [c]ourts in October 2017, Mother filed her Motion for a Transfer of Jurisdiction.
>
> 24. Mother moved to Florida in August 2015. She availed the Indiana [c]ourts from August 2015 until October 2017.
>
> 25. In fact, Mother agreed that Hamilton County, Indiana should have jurisdiction in the May 31, 2016 Order.

26. The [c]ourt notes that Mother only attempted to transfer jurisdiction after she was ordered to be in contempt on December 15, 2016.

(Appellant's App. Vol. II, p. 33).

[18] The May 31, 2016 Order provided that jurisdiction would be in Indiana and, at the time that the trial court decided to retain jurisdiction, the trial court had access to Child's medical and educational records as well as the GAL's report and testimony, even if it did not have access to all of Mother's witnesses. The trial court was familiar with the parties, Child, and some of the issues surrounding the instant litigation, having heard the evidence on Father's previous rule to show cause resulting from Mother unilaterally deciding to remove Child from public school in 2016. In addition, we note, as did the trial court, that Mother submitted herself to the jurisdiction of the Indiana courts until she was found in contempt, which supported the trial court's reasonable inference that Mother was at least partially motivated by her desire to find a forum that would provide her with a more favorable outcome. Although the evidence could have supported a different result, our standard of review precludes us from second-guessing the determination of the trial court. *See Kirk*, 770 N.E.2d at 307. Given the evidence supporting the trial court's jurisdictional determination, we cannot conclude that the trial court's decision to exercise its jurisdiction was clearly erroneous. *See In re Paternity of B.B.*, 1 N.E.3d at 160.

[19]     In arguing otherwise, Mother first draws our attention to the trial court's remark at the November 26, 2018, hearing that the GAL would be on the "hot seat" as evidence that the trial court "had already made up its mind prior to hearing the [j]urisdictional evidence." (Appellant's Br. p. 13). However, a GAL's function is to advocate for the best interests of the child, not for either parent, so we do not discern even the suggestion of bias in the trial court's remark.

[20]     Mother next argues that the trial court abused its discretion because the UCCJA "prioritizes the use of the child's 'home state', as the exclusive basis for jurisdiction of a custody determination" and that "Indiana Code section 31-21-5-1 provides that, under the [UCCJA], the "'home state' of the child is the state where the child has resided for the previous six month prior to the filing of the proceeding." (Appellant's Br. pp. 12-13). Mother supports these arguments with citation to New Jersey caselaw and a 2015 unpublished Indiana Court of Appeals opinion, neither of which is binding legal authority, even if they were relevant. In addition, Mother's argument misses the mark because section 31-21-5-1 applies to initial custody determinations and is not directed to the issue of whether a trial court should continue to exercise its original jurisdiction.

[21]     Mother also argues that the monetary expense to her of litigating in Indiana rendered it an inconvenient forum because she is a single parent with a single income. We do not find this to be a persuasive argument, as the evidence at the November 26, 2018, hearing was that Mother earned a greater income than Father. Crediting Mother's argument would entail reweighing the evidence,

which is contrary to our standard of review. *See Manis*, 104 N.E.3d at 617. Mother also relies on matters outside of the record on appeal, such as her claim that the trial court was not familiar with Child's school district policies which she enumerates. These arguments are in contravention of the Indiana Appellate Rules which require factual matters to be supported by citations to the record. *See* Ind. Appellate Rule 46(A)(8)(a). In addition, Mother contends that the trial court did not timely render its jurisdictional determination because it did not deny her Motion to Transfer Jurisdiction until March 26, 2020, when it issued its Order on All Pending Matters. This argument ignores the trial court's oral ruling at the November 26, 2018, hearing that it would retain jurisdiction. In short, because the trial court's decision to retain its jurisdiction was supported by the evidence, we will uphold it.

### III. *Contempt Orders*

[22] Mother challenges the trial court's conclusion that she was in contempt of its previous orders and its denial of her rule to show cause motions against Father. Indiana trial courts have the inherent authority to enforce their orders through their contempt powers. *In re Paternity of N.T.*, 961 N.E.2d 1020, 1022 (Ind. Ct. App. 2012). "It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016). "We will reverse a trial court's findings of contempt only if there is no evidence or inference therefrom to support the finding." *Id*.

## A. *Contempt by Mother*

In Father's rule to show cause motions, he alleged that Mother violated the May 31, 2016 Order by filing her October 13, 2017 petition in Florida and that Mother willfully violated her responsibility as a joint legal custodian when she failed to communicate or reach an agreement with Father regarding twenty-one doctor's visits for Child between September 1, 2016, and October 31, 2017. In its March 26, 2020 Order finding Mother in contempt, the trial court entered the following relevant findings:

> 2. After reviewing the evidence and the May 31, 2016 Order, the [c]ourt finds that Father's *Verified Motion for Rule to Show Cause* regarding Mother's October 17, 2013 Petition to Domestic [sic] is GRANTED. [Mother] willfully violated the May 31, 2016 [O]rder that clearly states that the jurisdiction should remain in Hamilton County, Indiana unless either party petitions for a review by the [c]ourt.
>
> * * * *
>
> 5. Father admitted evidence as to the twenty-one different doctor's visits. Mother failed to produce evidence showing that she did in fact inform Father of each appointment in advance, seek his agreement, and provide follow up information following each appointment.
>
> 6. Communication is critically important between co-parents particularly when the parents live far apart. The [c]ourt determined the evidence clearly shows that Mother views Father less as a co-parent, but more as an obstacle that interferes in her own objectives.

(Appellant's App. Vol. II, pp. 30-31). The trial court found that, because this was Mother's second occasion to be found in contempt and there was evidence that she continued to willfully disregard the court's orders, it would order Mother to pay Father $2,500.

[24] Mother contends that the trial court abused its discretion in finding her in contempt for filing her October 13, 2017 petition in Florida because the May 31, 2016 Order did not specify that she must petition for review of jurisdiction in Indiana and because she merely relied upon the advice of counsel when she filed her Florida petition. However, Section 4 of the May 31, 2016 Order entitled "Continuing Jurisdiction of the [c]ourt" expressly provided that "[t]he custody and parenting time provisions provided for in this Agreement are subject to the *continuing jurisdiction of the Hamilton County Court* and may be reviewed from time to time upon petition of either party as circumstances and the best interests of [Child] may require." (Appellant's App. Vol. II, p. 51) (emphasis added). Thus, Mother's argument flies in the face of the express language of the May 31, 2016 Order. In addition, Mother does not support her second proposition—that reliance on the advice of counsel excuses contempt— with any citation to legal authority. As noted above, an appellant must support each contention with cogent reasoning and citation to the legal authority relied upon. App. R. 46(A)(8)(a). Failure to present a cogent argument on appeal results in waiver of the issue. *Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019). Therefore, we decline to address Mother's argument regarding her reliance on the advice of counsel.

[25] As to the trial court's finding of contempt based on Child's twenty-one doctor's visits, Mother contends that the evidence did not support a finding that she failed to inform Father of these visits. However, between September 1, 2016, and October 31, 2017, Wife carried Child on her health insurance policy. Father presented a summary of claims made on Wife's policy that showed that Child had at least twenty-one discrete claims during that time period. Father also testified that prior to the parties using an online communication application in July 2018, Mother did not inform him about Child's medical appointments unless Child would be absent from school or it supported Mother's case. This evidence sufficiently supported the trial court's findings, and it is the only evidence that we will consider in conducting our review. *See Manis*, 104 N.E.3d at 617. We also reject Mother's assertion that she could not be held in contempt for failing to apprise Father of these visits because no court order required her to do so or to obtain Father's approval. Mother knew that she shared legal custody of Child with Father, and "joint legal custody" is defined as sharing "authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." I.C. § 31-9-2-67.

[26] Mother also briefly challenges that trial court's contempt sanction ordering her to pay $2,500 to Father, arguing that she was complying with the trial court's orders and had only been found in contempt once, not twice, as found by the trial court. However, we have already determined that the evidence supported the trial court's conclusion that Mother violated its orders, and the record

indicates that Mother had previously been found to be in contempt on December 15, 2018, which would make this her second contempt citation. Concluding that the trial court's findings and conclusions regarding Mother's contempt were supported by the evidence, we do not find them to be clearly erroneous. *See In re Paternity of B.B.*, 1 N.E.3d at 160.

### B. *Father's Contempt*

Mother sought to have Father held in contempt based on her allegations that, in violation of the May 26, 2016 Order, Wife interfered with Father and Mother's communications, Father failed to inform Mother that he would travel to Las Vegas with Child during his summer 2018 parenting time, and Father failed to ensure that Child engaged in therapy during his parenting time. In denying Mother's rule to show cause motions, the trial court entered the following relevant findings regarding those issues:

> 20. The evidence shows that in fact, Mother contacted Wife directly at different times. In addition, due to the distance involved, Father's work as a plumber, and Wife's insurance experience, Wife's communication with Mother was appropriate.
>
> \* \* \* \*
>
> 43. [] Father is permitted to travel with [] Child during his parenting time. There is not a single order stating that he cannot travel. Father is admonished that any further out of state travel involving [him and Child] must be fully communicated to Mother beforehand.

44. [] There is not a single order stating that Father must facilitate therapy for Child during his parenting time. Father is admonished that [C]hild has anxiety and therapy assists with that. It is in the best interest of [C]hild that Father attempt to continue therapy when [C]hild is with him even if that therapy consists of telephonic sessions with [C]hild's therapist in Florida.

(Appellant's App. Vol. II, pp. 33, 36-37).

[28] Mother contends that Father was in contempt because the May 26, 2016 Order directed the parties to improve their communication, incorporated the ancillary provisions of Section I of the Indiana Parenting Time Guidelines (IPTG), and that the "IPTG states '. . . All communications concerning a child shall be conducted between the parents. . .' (IPTG Sec. 1(A)(1))". (Appellant's Br. p. 21). In support of this argument, Mother directs our attention to a letter Father sent her on November 13, 2011, in which Father requested that Mother communicate with Wife. Mother also directs our attention to various portions of Father's testimony in which he recognized that Wife communicated with Mother. However, the trial court findings regarding Mother's communication with Wife are supported by various emails admitted at trial which Mother addressed directly to Mother and Father and Wife's testimony that Father was often not accessible due to his work, whereas Wife worked at a computer all day. In light of this evidence, the trial court's findings were not clearly erroneous. *See In re Paternity of B.B.*, 1 N.E.3d at 160. Mother's argument does not persuade us because it essentially requests that we consider evidence that

does not support the trial court's decision, which is contrary to our standard of review. *See Manis*, 104 N.E.3d at 617.

[29] Mother also argues that Father was in contempt of the May 31, 2016 Order because the IPTGs require that a parent traveling with a child during parenting time provide the other parent an itinerary and details where they can be reached, all of which she contends he did not do for purposes of the 2018 trip to Las Vegas. Mother further argues that Father was in contempt because the IPTGs provide that a parent should "participate in ongoing therapies and treatment prescribed for a child . . ." which she contends Father failed to do when Child did not receive therapy during Father's parenting time. (Appellant's Br. p. 25). However, putting aside the fact that Father testified at the March 28, 2019, hearing that he had informed Mother he would travel with Child to Las Vegas, even if Father had violated the portions of the IPTG that were incorporated by reference into the May 31, 2016 Order, Mother provides us with no legal authority for her proposition that the trial court committed reversible error by failing to find Father in contempt under these circumstances. Although Father has failed to provide us with an appellee's brief, this does not relieve Mother of her burden to support her argument with legal authority supporting her position. Without more, and given the deference we accord to trial courts in family law matters, we will not substitute our own judgment for that of the trial court. *See Kirk*, 770 N.E.2d at 307.

Mother also challenges the trial court's decision not to modify legal custody of Child to rest solely with her. We review a trial court's ruling on legal custody modifications for an abuse of its discretion, which occurs when its decision is against the logic and effect of the facts and circumstances before it. *Hecht v. Hecht*, 142 N.E.3d 1022, 1028 (Ind. Ct. App. 2020). "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id*. at 1029. Given the deference that we accord to trial courts in matter of family law, it is "relatively rare" for us to reverse a child custody determination. *Id*.

The trial court entered the following relevant findings denying Mother's legal custody motion:

> 15. The [c]ourt has heard and reviewed substantial evidence in the form of documentation and witnesses of Mother's inability to cooperate with Father, Child's medical professionals, and the faculty of three different schools Child has attended in the past four years.

> 16. The [GAL] also found in his report that legal custody should remain the same.

> 17. The parties shall continue to have joint legal custody. Mother and Father shall both make every effort to resolve disputes between themselves. If disputes cannot be resolved, the parties shall engage in mediation prior to filing any further

motions for rule to show cause or motions to modify custody except in the case of an emergency.

(Appellant's App. Vol. II, p. 32).

[32] The only trial court finding specifically challenged by Mother is that pertaining to her inability to cooperate with the personnel at Child's three schools. While Mother acknowledges that there was evidence that she had conflicts with Betsy West, Child's second grade teacher at Littleton Elementary, "there was no evidence presented from two of the schools mentioned here." (Appellant's Br. p. 27). However, Father testified at the November 26, 2018, hearing that Mother had never been supportive of Child's educators and that at a meeting to discuss accommodations for Child at her most recent school, Edison Arts Elementary, Mother had been "very combative," such that one of the school's personnel had to remind Mother that they were at the meeting for Child and not to fight. (Transcript Vol. II, p. 110). It was the opinion of the GAL that

> Mother's continued educational disputes, from the earlier withdraw from school to home school, up to and including refusing to agree with the 504 Plan of [Child's] school cause concern that Mother will not accept that the school has provided accommodations for [Child], and that they also have expertise in education related disabilities.

(Exh. Vol. IV, p. 55). In addition, at the final evidentiary hearing, Mother acknowledged that she had "problems" working with the staff at Littleton and Edison Arts. (Tr. Vol. III, p. 107). This evidence supports the trial court's

finding that Mother had demonstrated an inability to cooperate with Child's school personnel.

[33] The remainder of Mother's argument challenging the trial court's denial of her request to modify legal custody consists of drawing our attention to evidence which she contends demonstrates that Father impeded communication with her and Father did not sufficiently accept Child's medical and educational issues. These arguments are unavailing inasmuch as crediting them would require us to consider evidence that does not support the trial court's determination, which is contrary to our standard of review. *See Manis*, 104 N.E.3d at 617. Because sufficient evidence supported the trial court's findings denying Mother's request to modify legal custody, we will not disturb the trial court's ruling.

## V. *Child Support Arrears*

[34] Mother's last contention is that the trial court erred when it did not order the modification of Father's child support obligation to be applied retroactively. As a general matter, a trial court may choose to make the modification of child support relate back to the date the petition to modify was filed, or to any date thereafter. *Becker v. Becker*, 902 N.E.2d 818, 820 (Ind. 2009). We review a trial court's decision on whether to order retroactive child support for an abuse of discretion. *Sexton v. Sedlack*, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*.

[35] The trial court entered the following relevant findings regarding child support:

32. The [c]ourt notes that Father has incurred an involuntary change in lifestyle due to a pending divorce with [W]ife. Father will no longer be able to share the cost of his household overhead with another income earner.

33. At the time of the filing of this order, the Country is in the middle of the COVID-19 national emergency. Indiana Governor Holcomb has issued executive orders declaring only essential businesses should remain open and ordering citizens to stay at home. Father is a plumber. The [c]ourt is unable to ascertain the effect of these executive orders on Father's income.

34. A retroactive application of child support backdated to the date of filing would create an arrearage of over $5,500. Given the crisis and Father's altered circumstances, the [c]ourt finds an arrearage to be unfair.

(Appellant's App. Vol. II, pp. 34-35). The trial court ordered Father's new child support obligation to be effective as of March 27, 2020, creating no arrearage.

[36] Mother argues that the "waiver of back support was not supported by the evidence, since Father presented no evidence explaining or requesting that it be waived. The [t]rial [c]ourt entered findings sua sponte, such findings are clearly erroneous." (Appellant's Br. p. 32). However, Father had requested physical custody be awarded to him, with an attendant reduction in his child support. In addition, in her proposed Order, Mother specifically requested that the new child support order she requested be applied retroactively to create a $5,293.38 arrearage. Therefore, the trial court's findings were not sua sponte, in that they were in response to Mother's express request. The trial court ruled on Mother's

request, which Mother does not refute was within its discretion. Furthermore, although Mother does not specifically challenge the evidence supporting the trial court's individual findings of fact, Father testified regarding his income, his work as a plumber, and his pending divorce, and, therefore, there was evidence supporting the trial court's order, which precludes us from finding it clearly erroneous. *See In re Paternity of B.B.*, 1 N.E.3d at 160.

# CONCLUSION

[37] Based on the foregoing, we conclude that the trial court's March 26, 2020 Order on All Pending Motions was supported by the evidence and is not clearly erroneous.

[38] Affirmed.

[39] May, J. and Altice, J. concur